SPIVA, *Appellant*, v. THE OSAGE COAL AND MINING COMPANY.

1. **Waiver.** One who voluntarily assumes a risk, thereby waives the provisions of a statute made for his protection.

2. **Contributory Negligence :** PERSONS WORKING IN COAL MINES : STATUTE. The act of the general assembly of March 23, 1881 (Laws 1881, p. 165), providing for the health and safety of persons employed in coal mines, does not exempt any one so employed from the direct and immediate consequence of his own carelessness.

3. —— : —— : RIGHT OF ACTION. Where one so employed in a

coal mine is injured and killed, his widow will have no right of action therefor, if the husband could not have maintained an action had death not ensued.

4. **Practice.** Where there is no dispute as to the facts, it is the duty of the court to apply the law thereto.

5. **Persons Employed in Coal Mines :** ACT OF MARCH 23, 1881, ACTION ON. In an action on said statute of March 23, 1881, for an injury to an employe in a coal mine, by reason of the neglect of the defendant to fence the entrance of the shaft, the only inquiry is whether the requirements of the statute were complied with, and if not, whether the injury complained of was occasioned thereby.

*Appeal from Henry Circuit Court.*—HON. JAMES B. GANTT, Judge.

AFFIRMED.

*M. A. Fyke* for appellant.

(1) The court erred in excluding the evidence offered by appellant to show the proper and prudent manner of fencing and protecting the top of the coal shaft. (2) The demurrer to the evidence should not have been sustained, for the evidence clearly showed that the primary cause of the accident was the failure of the defendant to fence and cover, or protect, the top of the shaft as required by the act of the general assembly. Acts of 1881, p. 168, sec. 8 ; *Devlin v. Gallager*, 6 Daly, 494 ; *Loewer v. City, etc.*, 77 Mo. 431 ; *Ry. v. Wyly*, 65 Ga. 120. By section six of said mining act it is provided that "any party or person neglecting or refusing to perform the duties required to be performed by sections four, five, six, seven and eight, shall be deemed guilty of a misdemeanor." So that defendant in this case, in failing to protect the top of its shaft, was guilty of a criminal offence, and is liable in a civil action for all damages arising from such criminal act. *Binford v. Johnson,* 22 American Law Register, 50 ; *Henry v.*

*Railroad Company*, 50 Cal. 176. In *Weick v. Landes*, 75 Ill. 93, it is said: "Whoever does an unlawful act is to be regarded as the doer of all that follows." *Greenland v. Chaslin*, 5 Exch. 243. The mere fact that deceased may have known that the shaft was not protected, would not preclude a recovery, if he fell without any fault or negligence on his part. *Loewer v. City of Sedalia, supra; Buesching v. St. Louis Gas Co.,* 73 Mo. 220; *Pennsylvania Co. v. Frana*, S. C. Ill., Nov. 17, 1884. The presumption of law is that the deceased was in the exercise of ordinary care, and this presumption is not overthrown by the mere fact of injury. *Buesching v. St. Louis Gas Co., supra;* Sherman & Redfield on Negligence, sec. 44; *Hoyt v. City of Hudson*, 46 Wis. 105. There was no evidence showing that deceased was negligent at the time he fell, and nothing from which negligence could be presumed, unless the fact that deceased knew that the top of the shaft was not protected, and could have seen it if he had looked, raises such presumption. Such facts do not raise a conclusive presumption of negligence in him, at all events, and the question of negligence should have been submitted to the jury. *Barton v. Railroad Co.*, 52 Mo. 253; *Fernandes v. Railroad Co.*, 52 Cal. 45.

*B. G. Boone* and *James Carr* for respondent.

(1) No cause of action was stated in the petition. It failed to state facts bringing it within the terms of the mining act. Besides there are no facts alleged from which a breach of duty to the deceased can be deduced. *Williams v. Hurgham, etc.*, 4 Pick. 341; *Bartlett v. Crozier*, 17 John. 456; *Welton v. Ry.*, 34 Mo. 358; *Ry. v. Wilson*, 31 Ohio, 555. (2) Plaintiff's evidence shows that the negligence of the deceased was the proximate cause of his death, notwithstanding the failure of respondent to securely fence the top of the shaft into

which he stepped and fell. *Reynolds v. Hinman*, 32 Ia. 146. The deceased knew the danger and voluntarily assumed the risk. *Powell v. Ry.*, 76 Mo. 80 ; *Lenix v. Ry.*, 76 Mo. 86. (3) The court properly sustained the respondent's demurrer to appellant's evidence. Cases last *supra*.

RAY, J.—This is an action begun by plaintiff against defendant for damages, on account of the death of her husband, Edward L. Spiva, which, as was admitted upon the trial, was caused by an injury received by him in falling down the shaft at defendant's coal mine, said Spiva being at the time in defendant's employ thereat. A demurrer to the evidence was sustained by the trial court, and the propriety of this ruling is the main question before us. The petition charged, among other things, that the cage was lowered to the bottom of the shaft without the knowledge of Spiva, upon the order of defendant's foreman, and contrary to the usual custom of defendant, while Spiva was dumping the coal from the box which had just been taken from the cage, and that, in attempting to put the coal box back onto the cage he stepped into the shaft. It is perhaps sufficient to say of this allegation that there is no evidence that the foreman gave any order whatever, or even that he was present, nor does it show what defendant's customary way of lowering said cage was, or that it was managed or lowered in any different way upon this occasion, through the direction or procurement of defendant or its other servants. The mere fact of his falling down the shaft is the only evidence to show that the cage was lowered to the bottom of the shaft without his knowledge.

The petition, however, is substantially grounded upon "an act providing for the health and safety of persons in coal mines, and providing for the inspection of the same." See Acts of 1881, p. 168. Section eight

Spiva v. The Osage Coal & Mining Co.

thereof, provides that: "The top of each and every shaft and the entrance to each and every immediate working vein shall be securely fenced by gates properly covering and protecting such shaft and entrance thereto." Section fourteen of same act provides: "For any injury to persons or property, occasioned by any wilful violations of this act, or wilful failure to comply with any of its provisions, a right of action shall accrue to the party injured for any direct damages sustained thereby; and, in case of loss of life, by reason of such wilful violation, or wilful failure, as aforesaid, a right of action shall accrue to the widow of the person so killed, his lineal heirs, or adopted children." By section six of said mining act it is provided, that: "Any party or person, neglecting or refusing to perform the duties required to be performed by sections four, five, six, seven and eight, shall be deemed guilty of a misdemeanor."

The defendant had not complied with the above and foregoing provisions of the statute in regard to gates, and would be clearly liable for any injury occasioned thereby to one coming within its provisions, and in case of death the right of action would accrue under the statute to the widow of the person killed, his lineal heirs or adopted children. The evidence also shows, however, that Spiva was employed to work not *in* the coal mine, but on top of the ground and at the entrance to the shaft, and that he accepted such employment and remained engaged therein for sixteen months previous to the date of injury, with full knowledge of the condition of things. There were no gates there when he began work. The witness, Richard Bowen, was the pit boss at the time the accident happened, and was mine inspector for Henry county, at the date of the trial. With the exception of the plaintiff, who testified in her own behalf, and whose testimony was solely in relation to the marriage, and health, and earnings of her husband.

Bowen was the only witness introduced at the trial. He said: "The top of the shaft was not covered at all. On the west side of the shaft there was a couple of doors to break off the wind'; they were not put there as a fence or protection for the top of the shaft. On the east side there was nothing at all. * * * The top of the shaft was in the same condition at the time of the accident that it had been all the time for two years, and in the same condition it was in when Spiva first entered into the employment of the company. There had been no change."

Whatever danger may have been thus occasioned, by the absence of the gates, was not only open and obvious, but was actually known to said Spiva, and numerous authorities hold in such cases, that one who thus voluntarily assumes the risk, thereby waives the provisions of the statute enacted for his benefit. But we do not base the decision and result upon that ground, as the absence of the fences and gates did not, under the evidence, cause, or contribute to cause the injury. The statute gives the right of action for injuries *occasioned* by a wilful violation, or wilful failure to comply with its requirements. The mere co-presence and co-existence of the defendant's default, and an injury to the husband, with an entire absence of *causal* connection between them is not sufficient, for the law would regard the injury, not attributed by the evidence to the defendant's omission of duty as a procuring cause, as the result of accident or misfortune. In this case the proof is, we think, plain, that in the long, frequent and constant daily performance of his duties at the top of the shaft, and from his monotonous familiarity with them, Spiva was, when injured, discharging them in a mechanical fashion, without much conscious attention to what he was doing, or the condition of things around him at the time. If this inference does not logically and inevitably follow, then the most that can be said of plaintiff's evi-

dence is that it leaves the resulting injury without any ascertained or explainable cause.

The witness, Bowen, further testified : "Spiva had been in the employ of the defendant a year or more, about fifteen or sixteen months. His duties were on top, to dump the coal and stock, and send down props, and whatever he might be called on to do. When the cage came to the top it was fastened by iron (fangs) which caught the cage, and had to be unloosed by the dumper before the cage could descend. When the cage came to the top of the shaft it filled in the entire top of the shaft, and could readily and easily be seen by any one looking to see it. A person working around the shaft could readily see, if he looked, whether the cage was lowered or not. If he looked he could see. There was nothing to prevent his seeing that the cage was low-ered, if he had looked. The accident occurred in the daytime, in the afternoon about two or three o'clock." We thus see that when the cage came to the top, it fastened mechanically by iron fangs, but could not descend until these iron fangs were unloosed by Spiva, who was the dumper, and the cage was in this respect under his control. After the accident happened the cage was found at the bottom of the shaft, with Spiva lying upon it and the coal box lying upon him. There is no allegation or evidence that the iron fangs that secured the cage were defective, or were unfastened by any one else, and indeed no one is shown to have been present at the time except Spiva himself. The evidence shows nothing in the circumstance, time, place, or other conditions done or suffered by defendant, or otherwise occurring, to distract his attention, or to deceive or throw him off his guard. The evidence, we think, overcomes all presumptions of due care on Spiva's part, and makes his want thereof the proximate and direct cause of this distressing accident. The duties imposed by the statute were for the health and safety of those engaged in mining labor

and occupation, and entitled to its benefits, but it is not the intention of the act, or policy of the law, to exempt any from the direct and immediate consequence of his own carelessness. *Reynolds v. Hindman*, 32 Ia. 146; *Chicago Ry. v. Ward*, 61 Ill. 130; *Beaucoup Coal Co. v. Cooper*, 12 Brad. 373. The right of action accruing to the widow under the statute, is such as would have existed in the husband's favor if death had not ensued, and none other, and as we hold the husband could not, under the evidence, have maintained the action if he had survived the accident, a recovery must be denied plaintiff upon the same ground. There being then no dispute as to the facts in the case, it was the court's duty to apply the law to the undisputed facts, and its action in so doing in this case was, we think, entirely proper. The case of *Buesching v. The St. Louis Gas Light Company*, 73 Mo. 219, and other cases cited by appellant, are unlike the one before us in essential features, and are, therefore, inapplicable and without value as authority in this case.

There is one further matter, urgently presented by appellant, which we will notice briefly. Upon the trial the court sustained objections to the following questions asked the witness by plaintiff's attorney: " What, in your judgment as an experienced miner, is a safe and prudent manner of protecting or covering the top of a shaft?" "Was the top of the shaft at the time of defendant covered or protected in a safe and prudent manner?" The act in question is a legislative determination, to the extent of its provisions, of the matter contained in the questions, and in any action thereon, the only proper inquiry is whether its requirements have been, in that respect, complied with, and if not, whether the injury complained of was thereby occasioned. In this case there is no pretense that the fencing gates had been provided, and upon this branch of the evidence plaintiff's case was complete, and the porof offered, if com-

petent, and received could have added nothing.    In any view of the case its exclusion was without prejudice, Finding no error in the record, we affirm the judgment. All concur.