Spear, J.
The circuit court found and held that the common pleas erred in the admission of evidence, in the exclusion of testimony, and in the charge to the jury.
1. The admission of evidence. As construed by the trial court, the petition made a case against the defendants below on the ground qf negligence *30 simply, and on the further ground that the defendants had violated certain clauses of section 298 of the Revised Statutes. This section; among other things, makes it the duty of the operator of a coal mine to keep the same free from standing gas, and requires that every working place shall be carefully examined every morning with a safety lamp by a competent person before any of the workmen are allowed to enter the mine, and, by section 301 following-, a cause of action is given to a person injured for any direct damag-e occasioned by any violation of the act or wilful failure to comply with its provisions by the owner or manager of the mine. The defense was a denial of negligence and omission of duty, and that the injury occurred by reason of the wilful negligence of plaintiff after being warned not to enter the part of the mine where the explosion occurred. Plaintiff, by reply, denied the warning and the negligence.
Under the-construction given the petition, the plaintiff was permitted, against the objection of defendants, to introduce testimony tending to show what would be proper practice in operating mines in that vicinity independent of the statute. To rebut this, the defendants, against objection of plaintiff, were permitted to. offer proof showing- the ordinary and general practice in mines in the vicinity in the respects referred to. We need not take the trouble to determine whether or not the liberal construction given the pleading by the trial court was correct. ' Clearly, it would have been proper practice to embrace both charges in the petition, and, inasmuch as the plaintiff sought to try his case upon that theory, and could, if necessary, have amended the pleading to meet *31 the facts, he ought not to be heard to object to testimony in contradiction of the case he had thus voluntarily made. We think the testimony offered by the defendants was competent.
2. Exclusion of testimony. In the course of the trial the defendants called as a witness, one Kline, the mine boss, who testified generally for the defendants, and, among other things, stated that he had ordered a safety lamp when he first learned of the existence of gas in the mines, which was three or four weeks before Morgan was burned; that it had not come at the time Morgan was hurt, but did come later on the same day; that when he discovered gas in an entry where the ventilation would not carry it out, he brushed it out with his coat and then went in himself with a naked lamp to make sure no one would be burned. In cross examination Kline was asked if he did not say to one Ely, in Powell & Jones’ saloon, in Massillon, two or three days after the accident, “the company is blaming me for the accident; I don’t see why I am to blame; I requested a safety lamp from the company several'weeks back, and it didn’t come, and I consider my life worth as much as any other man’s.” The witness denied having made the declaration. Plaintiff then offered to prove by Ely that the declaration was made, but the court, on objection by the defendants, refused to admit the testimony, and this the circuit court held to be error.
We think it was not error to exclude the alleged statement to Ely. The matter was collateral. Besides, that part of the statement which relates to the failure to furnish a safety lamp had already been given in chief, and Morgan saw and understood the process of brushing out the gas; that *32 ■which was mere complaint could, not be taken as an admission against the defendants, for Kline was not shown to have authority to make statements binding upon his employers after the accident.
3. Charge of the court. The plaintiff’s evidence showed that he was an experienced miner, having-worked at the business for thirty-three years, five years of which he was in the employ of the defendants, and in the mine (No. 2) where.the accident occurred, about two months at the time he was .hurt. Fire damp is,volatile, gathers in the top. of the room or entry, is liable to be carried about by currents, and is highly explosive .and dangerous when brought in contact with, open flame, all of which was known to plaintiff. He -knew, also, of the presence of.- gas in the entry next to where he was working some three to five weeks before the accident, and saw the mine boss at least twice in the act of brushing it out with his coat toward the break-through, so that the current of air could get hold of it and carry it away.. One of,,the workmen had a safety lamp which, had been used somewhat by the mine boss in discovering1 gas, but the defendants had not procured a safety lamp to be used in the mine, and these facts, were known to Morgan., He made no objection, but continued at his work as before,.going into his room without waiting for an examination with a safety lamp to see whether there was gas there or not. . No direction of any kind was given to. him that morning about going in.
.Plaintiff’s evidence tended to show .further that on the morning of February 17, 1891, he, with others, went down the shaft to work, about seven o’clock; that he did not see the mine boss that *33 morning; tliat no direction or warning had been given him not to go into the ■ room where he had been engaged, and that, having no notice or suspicion of danger, in the ordinary course, and without warning or fault, he went with an open lamp lighted, and just as he got into the room an explosion of gas occurred which caused the injury. He did not know whether there was gas there or not before going, but if he had known of its presence he would not have gone in.
Defendant’s evidence tended to show that the day before the accident complained of there was a slight explosion of gas in the room in which Morgan was working, which singed his whiskers; that at the close of the day’s work he told the mine boss of it and that it had singed his whiskers a bit, which the mine boss saw was the fact; that the boss then said to him not to go into the room the next day until he, the boss, had been in first and brushed out the gas ; that the boss also said to the other men, in Morgan’s presence, to stay out until he had investigated; that plaintiff was cautioned a day or two before by fellow workmen concerning the danger from gas in that part of the mine, and, on the morning of the accident, as he was going to work, to stay out of his room or he would get burned, to which he replied that he knew gas— had worked fifteen or sixteen years in it; that in spite of repeated warnings, and with knowledge that the room had not been examined for gas that morning, and without direction to go, but against orders not to go, he went in with his lighted lamp, and the explosion at once followed.
As applicable to the issues made in the pleadings, and upon the facts and evidence, the court among other things, charged the jury that:
*34 £ ‘If an employe of experience in the mining business, such as the plaintiff is admitted to be, continues to labor in a dangerons and hazardous business where there is negligence on the part of the employer, or failure to use ordinary care and prudence for the protection of the miners, to the knowledge of such employe, and without communicating such knowledge to the master, he continues to so labor in such dangerous and hazardous business ; he takes upon himself the risk of such business, and of such' negligent act or omission, and cannot recover if he is injured thereby.
“If the plaintiff in this ease knew some time before his injury, that there was fire damp generated in this mine, in or near the place where he wTas working, and that the defendant was not causing the mine to be examined every morning with a safety lamp, but was undertaking to remove the gas by other methods, and that the plaintiff made no complaint of this method, but voluntarily continued in the service of the defendant, he could not recover in this action. In such case, he would have waived compliance with the statutory requirements, and would continue in the employment with ■ full knowledge that the same was not being complied with.
“If both plaintiff and defendant knew that fire damp was being generated in this mine, and in the part of the mine in which plaintiff was working, and it was in fact in said room where he was working, and the plaintiff was warned not to go into that part of the mine until the same had been first examined for fire damp, yet he voluntarily went into said room without any previous examination, and knowing that the same had not been made, he could not recover in this action. For, in such *35 ease, where knowledge exists of the fire damp, there is no necessity for examination with a safety lamp, with a view to discovering the same, for the presence of the gas being known to the plaintiff, he could not go where it was, and thus voluntarily expose himself to its dangers, and then hold the master liable therefor. ” Which'instructions the circuit court held to be erroneous.
As before stated, the construction given the petition at the instance of the plaintiff, embraced two charges, one of simple common law negligence, and the other of violation of a statutory requirement. The first paragraph quoted above related to the first named phase of the case, and limited the application of the principle to an injury occasioned by such negligence. The instruction, it seems to us, is a correct statement of the general rule as laid down by text writers and a large number of decided eases. Shearman and Redfield on Neg., section 208; Railroad v. Barber, 5 Ohio St., 541; Railroad v. Knittal, 33 Ohio St., 468; Railway v. Leech, 41 Ohio St., 388; Coal & Car Co. v. Norman, 49 Ohio St., 598.
The other two paragraphs present the question whether the intent of the statute, sections 298 and 301, is to give a workman injured by an explosion of gas, a right of action against his employer, who has failed to comply with the requirement in regard to keeping the mine free from gas, and requiring the use of a safety lamp to discover gas before any workman is permitted to enter the mine, where it appears that both parties knew of the existence of the danger, and the workman, although warned not to go where it was until an examination had first been made, voluntarily went into the danger ; or, where the workman, having full knowledge of *36 the volatile nature and explosive qualitjr of gas, and also knowledge some time before of the presence of gas in or near the place he was working, and knowledge that the place was not being examined as required by statute, and yet made no complaint, but voluntarily continued in the service and incurred the danger.
It is insisted that, giving effect to the statute, the conduct of the defendants was a wilful violation of its terms, and where the injury inflicted is wilful, negligence is not involved, and hence the question of contributory negligence as a defense, cannot arise. This proposition, as a general statement, is found in a number of text books. But, in order to avoid a misapplication of the rule, it will be well to inquire as to the facts involved in the class of cases from which the rule has arisen. An examination will, we think, show that in those cases, the negligence of the injured party preceded that of the defendant, and that the principle controlling the cases was that the guilty party could not be heard to justify his wilful act in the infliction of injury upon another by the fact that the other had, before the act of the defendant which inflicted the injury, been guilty of negligence. The general principle is stated by Judg’e Cooley, in his work on Torts, at page 810, in these words: “Where the conduct of the defendant is wanton and. wilful, or where it indicates that degree of indifference to the rights of others, which may justly be characterized as recklessness, the doctrine of contributory negligence has no place whatever, and the defendant is responsible for the injury he inflicts, irrespective of the fault which placed the plaintiff in the way of such injury: The fact that he has carelessly put himself in a place *37 of danger is never an excuse for another purposely or recklessly injuring him. ”
It is, perhaps, stated more pointedly by Mr. Beach in his work on Contributory Negligence, section 64, thus: “In order to constitute contribittonj negligence on the part of the plaintiff, there must be 'negligence on the part of the defendant. It is accordingly the well settled rule that when the defendant’s conduct amounts to wilfulness, and when the mischief is occasioned by his intentional and wanton wrong doing, the plaintiff’s negligence is no defense.” The author refers to a large number of cases as support for the text, in all of which the negligence of the injured party was, in point of time, first, and hence was not the proximate, but only the remote, cause; indeed, it was, strictly speaking, not the cause at ail, but rather the condition on which the cause acted. And the text itself shows that the author had in mind mischief occasioned by the defendant’s wrong doing', not the plaintiffs. The case of Davis v. Mann, 10 Mee. & W., 545, is a sample of many, and illustrates the principle. The owner of a donkey had fettered him and left him in the public road. The defendant negligently drove his horse at a rapid pace and ran over the donkey, killing him. It was held that although the animal was wrongfully placed in the road, yet that did not justify the act of the defendant, and that he was liable. His act was reckless, and in law, wilful. Railroad Co. v. Kassen, 49 Ohio St., 230, is based on a like principle, and the books are full of such cases.
Statutes of other states in many respects similar to our own have been given construction by the courts which seem not to be uniform. Spiva v. Osage Co., 88 Mo., 68, was a suit to recover *38 on account of death caused by an injury received by a workman in falling down the shaft at the company’s coal mine. Spiva was at the time at work at the top of the shaft dumping coal. The Missouri statute provides that the top of each shaft shall be securely fenced by gates properly covering and protecting- such shaft, and gives a right of action to persons injured in language substantially like that of section 301 of the Ohio statute. No gates had been placed at the shaft, which was fully known to Spiva, who had worked there about sixteen months. Had the gates been there, the accident, in all probability, would not have occurred, and yet the immediate cause was, apparently, Spiva’s own negligence. In the opinion this language is used: “The duties imposed by the statute were for the health and safety of those engaged in mining labor and occupation, and entitled to its benefits, but it is not the intention of the act, or policjr of the law, to exempt any from the direct and immediate consequence of his own carelessness.” The holding of the court is that “one who voluntarily assumes a risk, thereby waives the provisions of a statute made for his protection,” and that “the act does not exempt any one so employed from the direct and immediate consequences of his own carelessness.” Durant v. Lexington Co., 97 Mo., 62, was based upon the same statute, but for a violation of the clause which required the company to cover with boiler iron its cages in which coal was hoisted. Durant was en-g*ag’ed in putting’ a pit ear on the cage at the bottom of the shaft, and was injured by a large lump of coal which fell from the car which had reached the top of the shaft. Had the cage been covered he would not have been injured. The court held *39 that mere knowledge on his part of the failure of the defendant to have the mine provided with the protection required by law would not defeat the action. At first blush this might seem inconsistent with the holding in the Spiva ease, but it probably is not, inasmuch as Durant might rightfully assume that, although the statutory provisions for safety had not been provided, yet the company, in view of that fact, would exercise such care, by regulations as to the filling of the cages, or otherwise, as would prevent the falling of the coal. Durant did not himself contribute to the act which caused the injury. The court say in the opinion: “But we do not say in this case that plaintiff could recover if guilty of negligence himself.”
The Illinois mining statute is understood to give a cause of action in language similar to that of our ' section 301. In The Bartlett Co. v. Roach, 68 Ill., 174, suit was brought to recover for damages arising in much the same way as in the Spiva case. The holding against the company involves the condition that the employe, at the time of the accident was using due care. Litchfield Co. v. Taylor, 81 Ill., 590, was much like the Durant case, the main difference being that Taylor was riding up in the uncovered cage when the coal, falling from above, struck him. The holding, in support of the judgment against the company is, that “a recovery may be had notwithstanding the deceased may not have been free from fault and negligence on his part.” It will be noted that in these cases no act of the injured person caused the coal to fall. He had no agency in that, even remote. Nor does the record in the Taylor case show negligence on his part; indeed, the finding of the jury, under the charge given, implies that he was not negligent, *40 and the court in the opinion say: “Nor does the evidence justify the theory that the misconduct of the deceased materially contributed to the injury.”
The statute of Iowa requires that, any person running a threshing machine shall cause the tumbling rods next to the machine, together with the knuckles and joints and jack, to be safely boxed or secured while running, and that all persons who run any such machines without complying witli those requirements, shall be liable to any person damaged by reason of such neglect. In Reynolds v. Hindman, 32 Iowa, 146, the court held that the statute was not intended to change the general rule that a plaintiff cannot recover for injuries resulting from the alleged negligence of the defendant, if his own negligence iza any way contributed directly to the injury.
A statute of Massachusetts relating to elevators, provides that “the openings of all hoistways, hatchways, elevators, azad wellholes, upoza every floor of a factory, shall be protected’’ iza a manner specified, azad that azay “owner of a factory shall be liable for all damages suffered by any employe” by reason of a violatioza of any provision. In Taylor v. Carew Co., 143 Mass., 470, brought under this act, it was held that “aza employe canzaot inaizataiza aza action agaizast his employer for aza izajury caused by szzch violatioza, uzaless at the tizne he was iza the exercise of due care.” The law of Massachusetts is held to be that where a statute does not otherwise provide, the rule requiring the plaintiff in an actioza for negligence, to show that at the time' of the iza jury complained of he was in the exercise of due care, is the same whether the actioza is brought zander a statute or at common law. For construction of a statute providing *41 otherwise, see Commonwealth v. Railroad, 134 Mass., 211.
A statute of Michigan provides that all operators of railroads are required to so adjust, fill, or block the frogs, switches and guard-rails on their roads in all yards as to prevent the feet of persons from being caught therein; and any company which fails to comply with the provisions shall be liable to a fine of not less than a hundred or more than one thousand dollars, and neglect to comply shall be deemed a violation. In Grand v. Railroad Co. 83 Mich., 564, it is held that a person injured by being caught in a frog not blocked as required by this statute, cannot recover where he is himself guilty of negligence.
In Holum v. Railway Co., 80 Wis., 299, it is held that the statute ‘ ‘requiring every railroad company to erect and maintain guards at every frog, and providing that the company shall be liable for all damages sustained by reason of its failure to do so,” “does not take away the defense of contributory negligence. ”
The law of negligence is based upon the necessity of a policy which, in the affairs of life, will induce caution, and when it is asked that a particular construction be given a statute enacted for the purpose of protecting life and limb, we are bound to inquire whether such construction will encourage of discourage carefulness. If the latter, it should not be adopted unless the languagé of the act is so clear as to practically leave no room for construction. The text of the act in question furnishes no encouragement to the idea that one who is at fault himself which contributes directly to, and is the proximate cause of, the accident, may yet recover because of the previous failure of the *42 operator of the mine to comply with the statute. Indeed, language found in a penal act on the same subject (section 6871), negatives such conclusion. ‘ ‘Whoever knowingly violates any of the provisions of sections 297, 298,” etc., it is there provided, ‘ ‘or who shall enter any part of the mines against caution, ” etc., shall be fined, or imprisoned, or both. It cannot, we think, have been the intention of the legislature by this act to abrogate established common law principles for the purpose of giving a right of action to one who knowingly incurs a danger made possible by previous fault of his employer which, by ordinary can’e in observing caution, he could have avoided, such injury being incurred while the person is violating the inhibition of the very statute upon which he bases his action.
As said by Mr. Thompson, in his work on Negligence, section 1005, “the legislature will not be held to intend a repeal of the settled rules of the common law, unless the language employed by it clearty imports such an intention. ” Carle v. Railroad Co., 43 Me., 269; Sullivan v. Railroad Co., 11 Iowa, 421.
And we think it still wise to adhere to the old rule that where the injured party knowingly and deliberately assumes the risk that leads him into immediate danger, he ought not to have a remedjr for injuries brought on by his own act and arising from perils that are obvious and certain. A safe, and, it seems to us, a humane policjq looking to the prevention of accidents, is to require that all persons engaged in hazardous undertakings shall act up to the standard of due care set by the law.
Does it, therefore, follow that- sections 298 and 301 can have no beneficial effect? By no means. *43 While the statute, as we construe it, does not make the operator of the mine absolutely liable to a party-injured by an explosion of gas where the operator has not complied with the statute, such conduct is negligence per se, and the employer cannot escape liability by showing that he took other means to protect the workmen equally efficacious. Proof of failure to obey the statute is all that is necessary to establish negligence on the part of the operator, but the statute does not change the well established rule that where one has been guilty of negligence which may result in injury to others, still the others are bound to exercise ordinary care to avoid injury.
Other exceptions do the record of the common pleas were argued in the circuit court,- but we do not regard any of them as sufficient to require a reversal of the common pleas judgment.
Ihe judgment of the circuit court will be reversed, and the judgment of the common pleas affirmed.