## STANDARD OIL COMPANY *v.* HENRY.

[No. 23,819. Filed January 27, 1922. Rehearing denied June 1, 1922.]

1. APPEAL.—*Questions Reviewable.—Motion to Strike Out Part of Complaint.—Amendment of Complaint.*—The filing of an amended complaint.takes the original out of the record, and no error can be predicated on the ruling of a motion to strike out parts of the original. p. 173.

2. INSPECTION.—*De Facto Officers.—Deputy Inspector Appointed by State Inspector Protected in Office by Injunction.*—Plaintiff, a deputy inspector appointed by one in possession of the office of oil inspector and protected in the performance of the duties of that office by an injunction, was the only person authorized by law to make inspections of oil which defendant oil company was required to have inspected under §3 of the act of April 11, 1881 (§5151 *et seq.* R. S. 1881), and was an officer *de facto.* p. 181.

3. OFFICERS.—*De Facto Officers.—Compensation for Services.*—Though the incumbent of an office is only an officer *de facto*

under color of right, he alone is entitled to compensation for services rendered by him in the performance of the duties of the office. p. 182.

4. INSPECTION.—*Inspection of Oils.—Statutes.—Construction.— Inspection of Gasoline.*—Under the act of April 11, 1881 (§5151 *et seq.* R. S. 1881), providing for inspection of "all mineral or petroleum oil or any oil fluid, or substance which is a product of petroleum", oil inspectors are authorized to inspect gasoline, although it is not specified in the act. p. 185.

5. INSPECTION.—*Deputy Inspector's Action for Fees.—Evidence. —Inspector's Official Bond.—Admissibility.*—In an action by a deputy to recover fees, admission in evidence of the bond of the state supervisor of oil inspection was competent to show that at the time plaintiff was acting as deputy supervisor of oils he was acting under appointment of the state supervisor, who was in possession of the office and a *de facto* officer. p. 187.

From Marion Circuit Court (29,793) ; *Louis B. Ewbank,* Judge.

Action by James R. Henry against the Standard Oil Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Samuel D. Miller, Frank C. Dailey, William H. Thompson* and *Albert Rabb,* for appellant.

*U. S. Lesh,* Attorney-General, and *John F. Robbins,* for appellee.

*James W. Noel, Amicus Curiae.*

WILLOUGHBY, J.—This was an action commenced by the appellee against the appellant in the circuit court of Marion county, Indiana, for the recovery of certain fees alleged to have been due by reason of appellee's inspection of oil and gasoline belonging to appellant.

The original complaint was filed in the Marion Circuit Court on September 9, 1918. A motion was made to strike out parts of this complaint. This motion was overruled and appellant excepted. Appellant then filed a motion to make the complaint more specific. This mo-

tion was sustained in part. The appellee then, on December 24, 1918, filed an amended complaint and the case was tried upon the issues formed by the appellant's answer in general denial to the amended complaint.

The action was tried by the court and upon motion the court made a special finding of facts and stated conclusions of law thereon. The conclusions of law were in favor of appellee and judgment was rendered in favor of appellee for the sum of $1,162.84, with interest and costs.

The appellant filed a motion to strike out and restate the conclusions of law. This motion was overruled by the court to which ruling the appellant excepted. The appellant then filed a motion for a new trial. This motion was overruled and the court rendered judgment for appellee upon said finding and conclusions of law in the amount as above stated.

From this judgment appellant appeals and assigns as error: 1. The Marion Circuit Court erred in overruling appellant's motion to strike out parts of appellee's complaint. 2. The Marion Circuit Court erred in overruling appellant's demurrer to appellee's amended complaint. 3. The Marion Circuit Court erred in overruling appellant's motion for a new trial.

Appellant's motion to strike out parts of the complaint was directed to the original complaint. After that motion had been disposed of an amended complaint

1. was filed. No motion was made to strike out any part of the amended complaint. The filing of the amended complaint took the original complaint out of the record and it was superseded by the amended complaint, therefore, no error can be predicated on the court's ruling upon the motion to strike out parts of the original complaint. See *City of Huntington* v. *Folk* (1899), 154 Ind. 91, 54 N. E. 759.

It appears from the special finding of facts, in this case, that on June 22, 1917, the Governor of Indiana appointed and commissioned Marion Caldwell, as state supervisor of oil inspection, in the State of Indiana, and that said Caldwell was a skilled, suitable person and resided in the State of Indiana and qualified under the statute to hold such office and said Marion Caldwell qualified as such state supervisor of oil inspection in the State of Indiana for the term of four years beginning June 22, 1917. That assuming to act as such state supervisor of oil inspection, by virtue of his said appointment, the said Marion Caldwell, as such state supervisor of oil inspection appointed the plaintiff herein as an inspector of oils at Indianapolis, State of Indiana, and as special inspector in certain territory within the State of Indiana where he afterward made inspections; that the said plaintiff qualified as such oil inspector. That as state supervisor of oil inspection in the State of Indiana the said Marion Caldwell, as such officer, on July 5, 1917, promulgated the following rules and regulations for the inspection of gasoline, to wit:

"Rules and Regulations for the Inspection of Gasoline.

Pursuant to the provisions of an act of the General Assembly of the State of Indiana, approved April 11, 1881, entitled 'An act providing for the inspection of all kinds of oil that shall be used for illuminating and combustive purposes, regulating the sale of said oil, providing for certain appointments and removals to be made by the Governor, defining what shall constitute certain misdemeanors, prescribing penalties, repealing certain laws, and containing other matters properly connected therewith,' §2 of which authorizes and directs the State Supervisor of Oil Inspection to prescribe such general regulations and rules for inspection as may not be inconsistent with the terms and provisions of said act, I, Marion Caldwell, as State Supervisor of Oil Inspection,

hereby prescribe the following rules and regulations for the inspection of gasoline:

1.    All inspectors are hereby required, and it is made their duty to test the quality of all gasoline required to be inspected by the provisions of said law in the following manner, to wit:    Such inspection shall be in the nature of a test by approved methods of Beaume's hydrometer; in making this inspection you will take 60 degrees as your base for temperature, and you will deduct 1 degree for each 10 degrees above 60 degres in temperature to arrive at the gravity of the gasoline, and if the gasoline shows a temperature of less than 60 degrees, you will add 1 degree for every 10 degrees below to arrive at the gravity.

"Such inspection must not show a less degree Beaume than 56, and if the gasoline shows a less than 56 Beaume, it must be rejected.

"2.    The above rules and regulations shall be in force from and after this 5th day of July, 1917.

Marion Caldwell,<br>State Supervisor of Oil Inspection."

That the plaintiff assuming to act and acting under said appointment by said Marion Caldwell, as such inspector of oils and not otherwise, inspected the certain petroleum oils, commonly called kerosene, belonging to the defendant, which was by it kept and offered for sale for illuminating and combustive purposes within the State of Indiana, on the dates and in the amounts as charged against the defendant and demanded from the defendant fees for such inspection in the sums, set forth in the itemized statement in his complaint.

That the plaintiff also assuming to act and acting under said appointment by said Marion Caldwell as such inspector of oils, did inspect certain gasoline belonging to the defendant which was kept and offered for sale for illuminating and combustive purposes within the

State of Indiana on the dates and in the amount charged in the account filed in the itemized statement with his complaint.

That the several inspections of gasoline were made upon the receipt of notices which were sent by the defendant to said Marion Caldwell and by him delivered to the plaintiff, stating that defendant had such gasoline for inspection at the several places where the inspections were made; and at the times of the several inspections the gasoline inspected was in the possession of the defendant by its agents, and was being held by the defendant in the State of Indiana for the purpose of sale at retail in said state.

That the defendant received from said Marion Caldwell, a list of persons appointed by him as inspectors of oils, for defendant's different stations in Indiana, after the defendant had given the said Marion Caldwell, at his request, a list of such stations for that purpose, and supplied its agents with cards on which to send to said persons notice that the gasoline or kerosene was at a certain place to be inspected when it was so received, but it does not appear whether the notices received by plaintiff were on said cards or not. The samples which were inspected by the plaintiff were placed in separate cans and labeled by the defendant company and the plaintiff obtained such samples from the defendant company and took them away for the purpose of inspection.

That the several inspections of kerosene were made of samples obtained by the plaintiff from stations maintained in the city of Indianapolis, Indiana, on visits made by plaintiff to said stations, without any previous notice of the fact that the kerosene was there being sent to or received by the plaintiff, who visited said stations or places of business maintained by defendant two or three times a week, and on such visits got the samples

for inspection, which were each in a can and labeled when he got them.

The plaintiff did all of such inspection of both kerosene and gasoline at his own expense, and before this action was commenced he demanded of the defendant the payment of the fees claimed by him, for the recovery of which this action is brought, but the defendant refused to pay the same or any part thereof.

That the plaintiff tested the kerosene so inspected by him by using the test as prescribed in §1 of the act approved April 11, 1881, entitled "An act providing for the inspection of all kinds of oil that shall be used for illuminating and combustive purposes, regulating the sale of the said oil, providing for certain appointments and removals to be made by the governor, defining what shall constitute certain misdemeanors, prescribing penalties, repealing certain laws, and containing other matters properly connected therewith," and did not make nor attempt to make any other or different inspections thereof than as therein provided.

That the plaintiff did all of such inspection of gasoline by using the test and method of inspection as prescribed and set out in the "Rules and Regulations" promulgated by said Marion Caldwell, which are set out in the findings. That both kerosene and gasoline are fluid substances which are products of petroleum, and of which, products of petroleum form constituent parts and elements, and both of them are and for many years have been used in the State of Indiana for illuminating and combustive purposes; that both kerosene and gasoline are manufactured out of petroleum oil.

That on July 2, 1917, and for many days before and after said date, one Edward Barrett was the duly elected, qualified and acting state geologist of the State of Indiana, and that while he was so holding said office, on

said date, he undertook to, and so far as the law conferred on him power to do so, he did appoint one Adam H. Felker as state supervisor of oil inspection, and that the said Adam H. Felker thereupon took an oath of office and gave a bond, and duly qualified as such state supervisor of oil inspection, in all things as prescribed by §3 of the said act approved April 11, 1881, mentioned in the findings above, and so far as the law then in force permitted him to do so upon such appointment, under the then existing circumstances, but no farther, he qualified as state supervisor of oil inspection. That at the said time the said Adam H. Felker was a resident of the State of Indiana, and possessed the legal qualifications to accept an appointment to and serve in the office of state supervisor of oil inspection.

That said Adam H. Felker thereupon appointed deputies throughout the State of Indiana to serve as deputy inspectors of oils, and who likewise gave bond and took oaths of office, as provided by said act, and that said Felker procured the use of an office and he and said deputies caused notice to be sent to the different oil manufacturers and dealers in the State of Indiana, and to the general public, that they were ready to inspect oils, and in all things prepared themselves to do so; that said Adam H. Felker thereupon demanded of the said Marion Caldwell the possession of the public office which had theretofore been occupied as the office of the state supervisor of oil inspection, as set apart in the state house for that use, and of the papers and records of said office. But that on July 7, 1917, the said Marion Caldwell, filed in the Marion Circuit Court of Marion county, Indiana, his complaint and verified petition asking for an injunction and temporary restraining order forbidding said Adam H. Felker and the said deputies appointed by him to do any acts in the way of performing the duties of said offices of state supervisor of oil in-

spection, or inspectors of oils, or interfering with said Caldwell and his deputies in performing said duties and filling said offices. And thereafter on August 1, 1917, the said court upon the said petition of said Marion Caldwell in said action, entered a judgment granting to said Caldwell, a temporary injunction, which decreed that "the defendant, Adam H. Felker, and all persons assuming to act as deputies or otherwise under him, or by virtue of any authority in him vested, including each of his codefendants herein, are hereby enjoined from in any manner interfering with the plaintiff as State Supervisor of Oil Inspection of the State of Indiana, until such time as it shall first be established by the adjudication of a competent tribunal that said Adam H. Felker has a superior title to the said office of State Supervisor of Oil Inspection, or until further order of the court."

That said injunction continued in force and effect until after June 25, 1918; that neither this plaintiff nor this defendant was a party to said action, but that the relationship of each to the parties and the subject-matter thereof was such that said temporary injunction operated to and did restrain the defendant from procuring its oil and gasoline to be inspected by anybody else than the plaintiff during the entire period from July 7, 1917, to June 25, 1918, both dates inclusive and from disputing plaintiff's right to inspect it as the lawful inspector of oils, so far as any right of an inspector of oils to do so might exist, and operated to and did enable the plaintiff to act without hindrance as an inspector of oils, and that during the entire period when plaintiff made all the inspections for which he is now suing to recover fees the said injunction was in force.

That in an action brought by the State of Indiana on relation of said Adam H. Felker against the said Marion Caldwell to try title to the said office of state supervisor of oil inspection, to which action neither this plaintiff

nor this defendant was made a party, the Supreme Court of Indiana on June 27, 1918, decided that pursuant to said appointment made by the said state geologist, the said Adam H. Felker was the lawfully appointed state supervisor of oil inspection, and was entitled to said office, and that the act approved March 11, 1901, entitled: "An act regulating the inspection of oil and other petroleum products, providing penalties for its violation, repealing all former laws in conflict therewith," was unconstitutional.

That during the entire period from July 2, 1917, to June 25, 1918, the said Adam H. Felker was at all times ready, able and willing to perform the duties of the office of state supervisor of oil inspection and the several deputies appointed by him were ready, able and willing to perform the duties of the office of inspector of oils, but they were each and all prevented from doing so by said injunction.

That at all times from and after July 7, 1917, and continuously at all times when the plaintiff made the several inspections of kerosene and gasoline, for the inspection of which he is seeking by this action to recover fees, the plaintiff and the said Marion Caldwell both knew that the said Adam H. Felker claimed to be the duly appointed and qualified state supervisor of oil inspection by virtue of his said appointment by the state geologist, and that his said deputies claimed to be deputy inspectors of oils by virtue of appointments made by the said Felker, and that they severally claimed to be entitled to the possession and emoluments of the said offices, and entitled to perform the duties thereof. This finding was signed by the judge of the Marion Circuit Court.

The court thereupon stated the conclusions of law upon said special finding as follows:

1. The plaintiff is entitled to recover from the de-

fendant the sum of $1,040.20 for the said inspection of the said kerosene.

2. That the plaintiff is entitled to recover from the defendant the sum of $122.64 for the inspection of said gasoline.

3. That the plaintiff is entitled to recover from the defendant for said inspection of kerosene and gasoline, the total sum of $1,162.84.

4. That the plaintiff is entitled to recover from the defendant his costs herein.

And the defendant at the time excepted to each of the conclusions of law. The appellee was a *de facto* inspector of oils. In *Erwin* v. *Mayor of Jersey City* (1897), 60 N. J. Law 141, 37 Atl. 732, 64 Am. St. 584, the court defines a *de facto* officer as follows: "When an official person or body has apparent authority to appoint to public office, and apparently exercises such authority, and the person so appointed enters upon and performs the duties of such office, his acts will be held valid in respect to the public whom he represents, and the third persons, with whom he deals officially, notwithstanding there was a want of power to appoint him in the person or body which professed to do so." He will be an officer *de facto*.

The appellee was appointed by Marion Caldwell, who was the *de facto* state supervisor of oil inspection. See, *Felker* v. *Caldwell* (1919), 188 Ind. 364, 123 N. E. 794. At the time of the appointment of appellee as an inspector of oils and during all the time of his action as such and the time the fees for which he claims were earned, the said Caldwell was in the possession of the office and exercising the duties thereof and was protected by an injunction of the Marion Circuit Court in the performance of said duties. The appellee was the only person authorized by law to make inspections of oils which the appellant was required to have inspected

during that time.   He was in the possession of and exercising the duties of the office and comes fully within the definition of an inspector *de facto*.

But appellant insists that an officer *de facto* cannot maintain an action for fees because such fees follow the true legal title to the office and cites numerous authorities in support of this proposition.  These cases proceed upon the theory that an officer *de jure* has a vested property right in the office and the salary and emoluments thereof.  This theory is contrary to the spirit of our institutions and the form of our government.

In *Taylor & Marshall* v. *Beckham* (1900), 178 U. S. 548, 20 Sup. Ct. 900, 44 L. Ed. 1187, the court says: "The decisions are numerous to the effect that public offices are mere agencies or trusts, and not property as such.  Nor are the salary and emoluments property, secured by contract, but compensation for services actually rendered.  Nor does the fact that a constitution may forbid the legislature from abolishing a public office or diminishing the salary thereof during the term of the incumbent change its character or make it property.  True, the restrictions limit the power of the legislature to deal with the office, but even such restrictions may be removed by constitutional amendment.  In short, generally speaking, the nature of the relation of a public officer to the public is inconsistent with either a property or a contract right."

In *Prince* v. *Skillin* (1880), 71 Me. 361, 36 Am. Rep. 325, it is held there is no vested right in an office or its salary.

In *Lynch* v. *Chase* (1895), 55 Kans. 367, 40 Pac. 666, it is said in speaking of the office of warden of the State penitentiary: "The office is created for the public convenience, and the officer is the mere agent of the public, who, by virtue of his election or appointment, acquires

the right to exercise the functions of the office and receive the prescribed compensation until the end of his term, or until such time as there may be a resignation or forfeiture of and removal from the office in the manner provided by law."

In *Donahue* v. *County of Will* (1881), 100 Ill. 94, which was a proceeding to remove a county treasurer from office, it is said: "We are referred to the 2nd section of the Bill of Rights, which declares, that 'no person shall be deprived of life, liberty or property, without due process of law,' as controlling the question; that under this provision appellant could only be deprived of his title to or property in the office by a trial and judgment in a court of law; that no other trial, before any other tribunal, would be by due process of law, and that the General Assembly had no constitutional power to provide any other mode of trial. It is impossible to conceive how, under our form of government, a person can own or have a title to a governmental office. Offices are created for the administration of the public affairs. When a person is inducted into an office he thereby becomes empowered to exercise its powers and perform its duties, not for his, but for the public benefit. It would be a misnomer and a perversion of terms to say that an incumbent owned an office, or had any title to it. The doctrine on this subject is thus stated in the case of *Conner* v. *Mayor of N. Y.*, 1 Selden 285. It was there said: 'Public offices are not incorporeal hereditaments, nor have they the character or quality of grants. They are agencies. With few exceptions they are voluntarily taken, and may at any time be resigned. They are created for the benefit of the public, and not granted for the benefit of the incumbent. Their terms are fixed with a view to public utility and convenience, and not for the purpose of granting the emoluments during that period to the office holder. * * * The prospective

salary or other emoluments of a public office are not the property of the officer, nor the property of the State. They are not property at all. They are like daily wages unearned, and which may never be earned. The incumbent may die, or resign, and his place be filled, and the wages be earned by another. The right to the compensation grows out of the rendition of services, and not out of any contract between the government and the officer that the services shall be rendered by him.' This is correct in the sense that the officer does not own the title to the office in the manner that men own property; but by the commission or induction into office he acquires the legal right to exercise its functions, and to receive the emoluments that he earns, until the end of his term, or until his resignation, removal, or its forfeiture."

In *Gorman* v. *Commissioners of Boise County* (1877), 1 Idaho 655, the court held that the right to compensation is an incident to the services rendered and not to the office. The incumbent of an office though only an officer *de facto* under color of title or right, is alone entitled to compensation for the services rendered by him. In that case the court says the prospective salary or other emoluments of a public office are not the property of the officer or state, they are not property at all, they are like daily wages unearned and which may never be earned. The incumbent may die or his place be filled by another and the wages earned by another. An office is not property nor are the prospective fees the property of the incumbent. The right to fees does not grow out of any contract between the officer and the government. The right to fees arises from the rendition of services. See *Smith* v. *Mayor of N. Y.* (1868), 37 N. Y. 518.

In *Benoit* v. *Auditors* (1870), 20 Mich. 176, 4 Am. Rep. 382, it was held that the right to compensation belongs to the incumbent of an office holding under color

of right to services rendered and not to the officer *de jure* who has been kept out of the office but who has not entered upon his duties.

In *Erwin* v. *Mayor of Jersey City, supra,* the court held that one who becomes a public officer *de facto* without dishonesty or fraud on his part and who renders the services required of such public officer, may recover the compensation provided by law for such services during the period of their rendition.

The appellant cites numerous authorities to the effect that if a *de facto* officer collects fees as such, the officer *de jure* may recover such fees from the *de facto* officer. This question is not embraced within the issues of the instant case and we express no opinion upon it.

4. The appellant contends that there is no authority given by act of April 11, 1881, for the inspection of gasoline or collection of fees therefor. In 1887, a statute was enacted in the state of Nebraska providing for the inspection of "all mineral or petroleum oils, or any oil fluid, or substance which is a product of petroleum or into which petroleum or any product of petroleum enters or is found as a constituent element, whether manufactured in this state or not, shall be inspected as provided in this act before being offered for sale for consumption for illuminating purposes in the state."

In *Blaco* v. *State* (1899), 58 Nebr. 557, 78 N. W. 1056, interpreting this statute the court held that under its provisions it is the duty of the inspector of oils and his deputies to inspect every oil which is a product of petroleum which is intended by the owner to be put upon the market and be sold for illuminating purposes. That this act providing for the inspection of oils recognizes gasoline as a product of petroleum and contemplates its inspection when kept for sale as an illuminant. The fact that no grade or quality of gasoline will bear the

statutory test does not exempt such oil from inspection, if the owner intends to offer it for sale as an illuminant.

The court in that case says: "But it is insisted that as no quality or grade of gasoline will bear the prescribed test, the legislature could not have contemplated its inspection. This argument has weight, but it is not conclusive. The design of the law, as we interpret it, was not merely to prescribe a test for those products of petroleum which might or might not, according to their quality, be dangerously inflammable, but rather to require an effective inspection of every product of petroleum kept, or intended, for sale for illuminating purposes. An owner of gasoline kept or intended for sale as an illuminating oil was, under the act of 1887, legally bound to submit it for inspection, and he was also bound to pay the inspector the statutory fees for services rendered." As supporting this view see *Burkhart's Admr.* v. *Striger* (1902), 113 Ky. 111, 67 S. W. 270. The act of 1881, Acts 1881 p. 571, §§5151-5169 R. S. 1881, provides that "all mineral or petroleum oil or any oil fluid, or substance which is a product of petroleum, or into which petroleum or any product of petroleum enters, or is found as a constituent element whether manufactured within this state or not, shall be inspected, as provided in this act before being offered for sale or sold for consumption for illuminating purposes within this state."

It will be observed that the statute of 1881 is in precisely the same words as the Nebraska statute. The Nebraska statute as we have seen requires the inspection of gasoline and the fact that no formula is given in the statute for inspection of gasoline does not relieve it from inspection. In the instant case at the time the inspections were made by appellee he was a deputy inspector appointed by Marion Caldwell, the *de facto* supervisor of oil inspection of the State of Indiana. As such deputy inspector it was his duty to inspect all pe-

troleum oils or products of petroleum including gasoline as should be required to be inspected under the law.

It appears from the finding of facts in this case that during the time in which the services were performed for which the appellee is claiming fees, one Marion Caldwell was the *de facto* state supervisor of oil inspection, and in possession of the office of state supervisor of oil inspection and that by reason of an injunction procured by him in the Marion Circuit Court of Marion county, Indiana, it was impossible for any person not acting under such *de facto* state supervisor of oil inspection to inspect any oil in said State of Indiana.

The finding of facts shows that both gasoline and kerosene are products of petroleum. The defendant during said time was required under the law to procure the inspection of the kerosene and gasoline inspected by this appellee. Under appellee's appointment as deputy supervisor he was the only person authorized to make such inspections and that as such deputy supervisor he did make them, and we hold that he is entitled to recover the amount of fees named in the finding of facts in this case.

The finding of facts covers the issues in the case and is supported by sufficient evidence. It therefore follows that the trial court did not err in its conclusions of law and did not err in overruling appellant's demurrer to the amended complaint.

The appellant claims that the court erred in admitting over the objection of appellant exhibit No. 1. Exhibit No. 1 was the bond of Marion Caldwell as 5. state supervisor of oil inspection. This was competent for the purpose of showing the right by which the appellee was acting, as the facts show that at the time appellee was acting as deputy supervisor of oils he was acting under appointment by Marion Caldwell, who was in possession of the office of state super-

visor of oil inspection and who was at that time the *de facto* state supervisor of oil inspection in the State of Indiana. See *Felker* v. *Caldwell, supra.*

Several other objections to evidence are set forth in appellant's brief, but they all relate to the inspection of gasoline and proceed upon the theory that at that time the law did not authorize or require the inspection of gasoline. As the inspection of gasoline was contemplated and required under the act of 1881, these objections were correctly overruled. We find no error in the record of the court below.

Judgment affirmed.

Ewbank, C. J., not participating.

Townsend, J., dissents.