INDIAN REFINING COMPANY *v.* TAYLOR.

[No. 24,392. Filed May 2, 1924. Rehearing denied October 10, 1924.]

1. INSPECTION.—*Inspection of Oils.—Inclusion of Gasoline.*— Under §1, Act of April 11, 1881, "An act providing for the inspection of all kinds of oil that shall be used for illuminating and combustive purposes," etc., the inspection of gasoline was authorized. p. 239.

2. OFFICERS.—*De Facto Officers.—Compensation.*—Although the incumbent of an office is only an officer *de facto* under color of right he is entitled to recover compensation for services rendered therein. p. 239.

3. CONSTITUTIONAL LAW.—*Compensation for Inspection of Oils. —Due Process of Law.—Police Power of State.*—The collection of fees for the inspection of oils does not amount to the taking of private property without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States, but is an exercise of the police power of the State. p. 240.

4. CONSTITUTIONAL LAW.—*State Police Power.—Effect of Due Process Clause of Federal Constitution.*—The Fourteenth Amendment to the Constitution of the United States forbidding the taking of property without due process does not impair the police power of a state. p. 240.

5. CONSTITUTIONAL LAW.—*Compensation for Inspection of Oils.* —*Taking of Private Property Without Compensation.*—The rendering of a judgment for fees for inspecting oils pursuant to the provisions of a state statute (Act of April 11, 1881) was not in violation of Art. 1, §21 of the Bill of Rights of the Constitution of the State of Indiana, prohibiting the taking of private property without compensation. p. 240.

6. COMMERCE.—*Interstate Commerce.*—*Inspection of Oils.*—No question of interstate commerce was involved when facts showed that inspections of oil were made by deputy state inspector from samples voluntarily taken from tank cars by agents of the owners of the oil after the tank cars had been placed on side tracks preparatory to the unloading of the same into stationary tanks from which sales were made to purchasers, and that the practice of taking the samples for inspection from car tanks was pursuant to a mutual agreement between the inspector and the owners of the oil. p. 241.

7. PLEADING.—*Answer.*—*General Denial.*—*Special Denials Presenting No Issuable Fact.*—*Issues.*—Where one paragraph of an answer to a complaint was a general denial, and other paragraphs of the answer consisted of special denials of certain facts alleged by the complaint together with conclusions of law which presented no issuable fact and plaintiff's general denial of certain paragraphs of defendant's answer raised no issues of fact, the issues of the case were those presented by the complaint and the general denial thereto. p. 241.

8. INSPECTION.—*Excessive Fees Burden on Interstate Commerce.* —Where an action was brought to recover fees for the inspection of oils under the Act of 1881 relating to the inspection of oils, testimony which showed that fees of inspection so exceeded the cost of inspection as to place a burden on interstate commerce was properly excluded because the facts showed there was no question of interstate commerce involved, and the testimony therefore was irrelevant. p. 242.

9. INTEREST. — *Oil Inspector's Fees.* — *Time of Payment.* —Although the Act of 1881 relating to the inspection of oils provides for the payment of inspection fees at the time of inspection, the fact that the inspector at the end of each month made a detailed report of inspections for the previous month which was accompanied by a demand for payment entitled him to interest from the time the demand was made, and this sum became a debt on which the inspector was entitled to interest at the legal rate of six per cent. under §7952 Burns 1914. p. 242.

10. INSPECTION.—*Fees of Oil Inspector not Penalties.*—The fees of an oil inspector provided for by §4, Acts 1881 p. 574 are

not penalties in the sense that interest cannot be collected upon default in payment of the fees. p. 245.

11. INSPECTION.—*Inspection of Oils.—Fees.—Construction of Statute.*—The statute §4, Acts 1881 p. 574, gives the inspector of oils authority for charging fees on each tank car according to the number of barrels forming the bulk contents of such tank car. p. 247.

From Hendricks Circuit Court; *Zimri E. Dougan,* Judge.

Action by John C. Taylor against Indian Refining Company. From judgment for the plaintiff, defendant appeals. *Affirmed.*

*James W. Noel, Hubert Hickam* and *Alan W. Boyd,* for appellant.

*U. S. Lesh,* Attorney-General, and *John F. Robbins,* for appellee.

*Samuel D. Miller, Frank C. Dailey, William H. Thompson, Albert L. Rabb, Thomas D. Stevenson* and *Perry E. O'Neal,* Amici Curiae.

WILLOUGHBY, J.—The appellee, John C. Taylor, sued appellant to recover charges made against appellant for the inspection of kerosene and gasoline from December 1, 1917, to and including June 25, 1918, when appellee was acting as inspector of oils, assuming to act under appointment as such, made by one Marion Caldwell, a *de facto* but not a *de jure* state supervisor of oil inspection.

The appellee seeks to recover the charges as official fees due him by reason of the inspection of both oil and gasoline and seeks to recover interest on such unpaid official fees from the time of such inspection. The complaint is in one paragraph.

A motion was made by appellant to strike out the parts of the complaint respecting the inspection of gaso-

line. This motion was overruled and appellant then demurred to the complaint upon two separate general grounds, (a) that appellee as a *de facto* inspector could not recover compensation for services rendered in said office; and (b) that no recovery could be had for the inspection of gasoline, which demurrer was overruled. The appellant then filed an answer in five paragraphs. The first being a general denial and the second, third, fourth, and fifth, were affirmative paragraphs of answer. The plaintiff demurred to the second, third and fourth paragraphs of answer which was sustained, but the demurrer to the second paragraph of answer was by agreement withdrawn and the plaintiff then filed a reply in general denial to the second and fifth paragraphs of answer. The case was tried on the issues thus formed.

Upon request of the appellant the court made a special finding of facts and stated conclusions of law thereon. The finding of facts covers all the issues in the case and is as follows:

"1. The defendant in this cause is now and was at, during and throughout all times from and including the month of June, 1917, to and including the month of June, 1918, and continuously since has been a corporation duly organized and existing under and by virtue of the laws of the State of Maine and lawfully engaged in and transacting business in the State of Indiana, as a duly qualified foreign corporation under and pursuant to the laws of the said State of Indiana in such cases made and provided, and during and throughout said period was engaged in the manufacture outside of the State of Indiana of the products of crude petroleum and in transporting the same into the State of Indiana and selling and offering the same for sale in said State.

"2. On June 22nd, 1917, James P. Goodrich, was the duly elected and acting Governor of the State of Indiana, and did not hold any other office in said state nor under its law. And on said date, as such Governor, the said James P. Goodrich appointed and commissioned Marion Caldwell as State Supervisor of Oil Inspection in succession to one Carl Mote, whom said James P. Goodrich had previously, while he was Governor of the State of Indiana, appointed and commissioned as State Supervisor of Oil Inspection, but who had offered to said Governor his resignation from said position, which resignation had been accepted by said Goodrich, as such Governor of Indiana. That at the time of his appointment by said Governor the said Marion Caldwell was a skilled, suitable person, a resident of the State of Indiana, who was not interested in manufacturing, dealing or vending any illuminating or fuel oils manufactured from petroleum.

"3. That on the said date of receiving said commission, the said Marion Caldwell accepted the said appointment, and filed with the Secretary of State of Indiana his bond to the State of Indiana in the penal sum of Fifty Thousand ($50,000) Dollars, with surety not shown to have been approved by said Secretary of State, conditioned for the faithful performance of the duties of his said office of State Supervisor of Oil Inspection during the term of four years beginning June 22nd, 1917, which bond was indorsed as 'approved June 22nd, '17, J. P. Goodrich, Governor,' but without anything to show whether it was approved or disapproved by the Secretary of State, beyond the fact that it was so filed and thereafter remained in his said office. That at the time of the filing of said bond the said Marion Caldwell took the oath of office and immediately took possession of the said office of State Supervisor of Oil

Inspection, and of the official records and papers pertaining thereto, and entered upon the performance of the duties of said office. That at the time of said appointment and qualification of said Marion Caldwell it was deemed by him and by the Governor of the State of Indiana that his appointment as State Supervisor of Oil Inspection was made under and pursuant to the provision of an Act of the General Assembly of Indiana, entitled 'An act regulating the inspection of oil and other petroleum products, providing penalties for its violation, repealing all former laws, and laws in conflict therewith,' approved March 11, 1901, and by its terms intended to be in force from and after January 1, 1903; and that said Caldwell did not receive any appointment as State Supervisor of Oil Inspection except as he was appointed by said Goodrich as aforesaid.

"4. That from and after said date of June 22nd, 1917, pursuant to his appointment as aforesaid, the said Marion Caldwell continued and remained in possession of said office of State Supervisor of Oil Inspection, and in the active discharge of the duties of said office during and throughout the whole period of time when the plaintiff acted as inspector of oils, and when he made the inspections of the petroleum oils and products known as kerosene and gasoline as hereinafter stated, and was at said times the *de facto* and not the *de jure* State Supervisor of Oil Inspection.

"5. Assuming to act as State Supervisor of Oil Inspection by virtue of his said appointment by the Governor, and the facts as above set out, the said Marion Caldwell, as such State Supervisor of Oil Inspection, so appointed, did appoint the plaintiff herein as an inspector of oils at Danville, in the State of Indiana, and as special inspector in certain territory within the State of Indiana where he afterward made inspections. And the plaintiff thereupon took and subscribed an oath of

office as an inspector of oils, and executed a bond payable to the State of Indiana in the penal sum of $5,000 with surety approved by said Marion Caldwell, as State Supervisor of Oil Inspection, which bond and oath were · filed in the office of said Marion Caldwell, acting as State Supervisor of Oil Inspection. But he did not file any other bond, nor have his bond otherwise approved than as above stated and plaintiff did not receive any appointment as Inspector of Oils except as he was appointed by Caldwell as aforesaid.

"6. While so acting under said appointment of the Governor as State Supervisor of Oil Inspection, the said Marion Caldwell, acting as such officer, on the 5th day of July, 1917, prescribed and promulgated the following rules and regulations for the inspection of gasoline, to-wit:

"'Rules and Regulations for the Inspection of Gasoline.

"'Pursuant to the provision of an Act of the General Assembly of the State of Indiana, approved April 11, 1881, entitled, "An act providing for the inspection of all kinds of oils that shall be used for illuminating or combustive purposes, regulating the sale of said oil, providing for certain appointments and removals to be made by the Governor, defining what shall constitute certain misdemeanors, prescribing penalties, repealing certain laws, and containing other matters properly connected therewith," section two of which authorizes and directs the State Supervisor of Oil Inspection to prescribe such general regulations and rules for inspection as may not be inconsistent with the terms and provisions of said act, I, Marion Caldwell, as State Supervisor of Oil Inspection, hereby prescribe the following rules and regulations for the inspection of gasoline.

"'1. All inspectors are hereby required, and it is made their duty to test the quality of all gasoline required to be inspected by the provisions of said law in the following manner, to-wit:

" 'Such inspection shall be in the nature of a test by approved methods of Beaume's hydrometer; in making this inspection, you will take 60 degrees as your base for temperature, and you will deduct 1 degree from each 10 degrees above 60 degrees in temperature to arrive at the gravity of the gasoline, and if the gasoline shows a temperature of less than 60 degrees, you will add 1 degree for every 10 degrees below to arrive at the gravity.

" 'Such inspection must not show less degree Beaume than 56, and if the gasoline shows less than 56 Beaume, it must be rejected.

" '2. The above rules and regulations shall be in force from and after this 5th day of July, 1917.

Marion Caldwell,
State Supervisor of Oil Inspection.'

"7. That the plaintiff, assuming to act and acting under said appointment by said Marion Caldwell, as such inspector of oils and not otherwise, inspected the certain petroleum oils, commonly called kerosene, belonging to the defendant, which was by it kept and offered for sale for illuminating and combustive purposes within the State of Indiana, on the dates and in the amount, and charged against the defendant and demanded from the defendant fees for such inspection in the sums, all as shown in the schedule hereinafter set out and that said inspections were made on the several dates hereinafter mentioned by the inspection of samples, which said samples were taken from tank cars and one inspection or test and no more was made for each tank car; and that upon making said several inspections the plaintiff charged the defendant according to the number of barrels forming the bulk contents of the said several tank cars from which said samples were taken, all of which fees and charges are shown by the schedule following, to-wit: (Here follows a statement showing the several inspections of kerosene made by the plaintiff, stating the number of barrels inspected with date and place of inspection and his

charges therefor); all of which fees were computed at the rate of 40c on the first two barrels, 20c on the next eight barrels, 10c on the next thirty-five barrels, and 3c on each and every barrel additional to forty-five barrels, comprising the bulk contents of said tank cars from which respectively said samples were taken and inspected. That all of the samples taken and inspected by the plaintiff were taken by defendant at plaintiff's request by drawing the same from said tank cars before the same were unloaded, which said tank cars had been shipped in interstate commerce into the State of Indiana and were then on railroad sidings at their destinations, and that at the time said samples were taken from said tank cars, said tank cars were not being used for indefinite storage or as distributing tanks for local sales. That the several inspections herein found to have been made by the plaintiff were made from samples of the kerosene voluntarily taken by the defendant from its car tanks after said cars had been placed upon side tracks in position preparatory to unloading the same into stationary tanks from which the sales were made to purchasers; that the practice of taking the samples for inspection from the car tanks was pursuant to a mutual arrangement and understanding between the plaintiff and the several agents of defendant at the various places of inspection, and not otherwise.

"8. That the plaintiff, assuming to act and acting under said appointment by said Marion Caldwell, as such Inspector of Oils, and not otherwise, inspected the certain fluids and substances which were a product of petroleum oil, commonly called gasoline, belonging to the defendant, which was by it kept and offered for sale for combustive purposes within the State of Indiana, on the dates and amounts and charged against the defendant and demanded from the defendant fees

for such inspection in the sums, all as shown in the schedule hereinafter set out, and that said inspections were made on the several dates hereinafter mentioned by the inspector of samples, which said samples were taken from tank cars and one inspection or test and no more was made for each tank car; and that upon making said several inspections the plaintiff charged the defendant according to the number of barrels forming the bulk contents of the said several tank cars from which said samples were taken, all of which fees and charges are shown by the schedule following, to wit: (Here follows a statement showing the several inspections of gasoline by the plaintiff stating the number of barrels inspected with date and place of inspection and fees charged therefor), all of which fees were computed at the rate of 40c on the first two barrels, 20c on the next eight barrels, 10c on the next thirty-five barrels, and 3c on each and every barrel additional to forty-five barrels, comprising the bulk contents of said tank cars from which respectively said samples were taken and inspected. That all of the samples taken and inspected by the plaintiff were taken by defendant at plaintiff's request, by drawing the same from said tank cars before the same were unloaded, which said tank cars had been shipped in interstate commerce into the State of Indiana from a point or points outside the State of Indiana and were then on railroad sidings at their destinations, and that at the time said samples were taken from said tank cars, said tank cars were not being used, for indefinite storage or as distributing tanks for local sales. That the several inspections herein found to have been made by the plaintiff were made from samples of the gasoline voluntarily taken by the defendant from its car tanks after said car tanks had been placed upon side tracks in position preparatory to unloading the same into stationary tanks

from which sales were made to purchasers; that the practice of taking the samples for inspection from the car tanks was pursuant to a mutual arrangement and understanding between the plaintiff and the several agents of defendants at the various places of inspection, and not otherwise.

"9.   At the times of the several inspections the kerosene and gasoline inspected was in the possession of the defendant by its agents, and was being held by the defendant in the State of Indiana for the purpose of sale and consumption in said state.

"10.   The several inspections of kerosene and gasoline were made of samples obtained by the plaintiff from stations maintained in the State of Indiana, on visits made by plaintiff to said stations, without any previous notice of the fact that the kerosene or gasoline was there, having been sent to or received by the plaintiff, who visited said stations or places of business maintained by the defendant in said state two or three times a week, said samples having been taken and inspected by plaintiff as shown in findings No. 7 and No. 8.

"11.   The plaintiff did all of such inspection of both kerosene and gasoline at his own expense and at the end of each month while inspections were made before this action was commenced, he demanded of the defendant the payment of the fees claimed by him, for the recovery of which this action is brought, but the defendant refused to pay the same or any part thereof.

"12.   That the plaintiff tested the kerosene so inspected by him by using the test as prescribed in Section 1 of the act approved April 11, 1881, entitled, 'An act providing for the inspection of all kinds of oil that shall be used for illuminating and combustive purposes, regulating the sale of said oil, providing for certain appointments and removals to be made by the Governor, defining what shall constitute certain misdemean-

ors, prescribing penalties, repealing certain laws, and containing other matters properly connected therewith,' and did not make nor attempt to make any other or different inspections thereof than as therein provided.

"13.    That the plaintiff did all of such inspection of gasoline by using the test and method of inspection as prescribed and set out in the 'Rules and Regulations' promulgated by said Marion Caldwell, which are set out in finding No. 6 of these special findings, above, and did not use any heat or any fire in so inspecting and testing said gasoline, and that it is not possible to use a flash test nor a fire test in inspecting gasoline, at any temperature, not even as low as a temperature of 40 degrees below zero Fahrenheit, because the gasoline will itself take fire if flame is brought near it, and gasoline cannot be tested by using the test prescribed in Sec. 1 of said Act of 1881.

"14.    That both kerosene and gasoline are fluid substances which are products of petroleum; that both kerosene and gasoline are manufactured out of petroleum oil.

"15.    That on July 2nd, 1917, and for many days before and after said date, one Edward Barrett was the duly elected, qualified and acting State Geologist of the State of Indiana, and that while he was so holding said office, on said date, he undertook to, and so far as the law conferred on him power to do so, he did appoint one Adam H. Felker as State Supervisor of Oil Inspection, and that the said Adam H. Felker thereupon took an oath of office and gave a bond, and duly qualified as such State Supervisor of Oil Inspection in all things as prescribed by Sec. 3 of the said act approved April 11, 1881, mentioned in finding No. 12, above, and so far as the law then in force permitted him to do so upon such appointment, under the then existing circumstances, but no farther, he qualified as

State Supervisor of Oil Inspection.   That at said time, the said Adam H. Felker was a resident of the State of Indiana, and possessed the legal qualifications to accept an appointment to and serve in the office of State Supervisor of Oil Inspection.

"16.   That said Adam H. Felker thereupon appointed deputies through the State of Indiana to serve as deputy inspectors of oils, who likewise gave bond and took oaths of office, as provided by said act and that Felker procured the use of an office, and he and said deputies caused notice to be sent to the different oil manufacturers and dealers in the State of Indiana and to the general public that they were ready to inspect oils, and in all things prepared themselves to do so; that said Adam H. Felker thereupon demanded of the said Marion Caldwell the possession of the public office which had theretofore been occupied in the office of State Supervisor of Oil Inspection as set apart in the State House for that use, and of the papers and records of said office.   But that on July 7th, 1917, the said Marion Caldwell filed in the Marion Circuit Court of Marion County, Indiana, his complaint and verified petition asking for an injunction and temporary restraining order forbidding said Adam H. Felker and the said deputies appointed by him to do any acts in the way of performing the duties of said offices of State Supervisor of Oil Inspection or Inspector of Oils, or interfering with said Caldwell and his deputies in performing said duties and filling said offices.   And thereafter on August 1st, 1917, the said court, upon the said petition of said Marion Caldwell in said action, entered a judgment granting to said Caldwell a temporary injunction, which decreed that 'the defendant, Adam H. Felker, and all persons assuming to act as deputies or otherwise under him, or by virtue of any authority in him vested, including each of his co-defendants herein,

are hereby enjoined from in any manner interfering with the plaintiff as State Supervisor of Oil Inspection of the State of Indiana, or of any deputy inspectors acting under appointments from him, while the plaintiff or said inspectors are engaged in the enforcement of the oil inspection laws of the State of Indiana, or from in any manner assuming to take from them or in any manner interfere with their possession of the books and records of said office, or to in any other manner hinder or interfere with the plaintiff and those acting under his authority in the discharge of the duties of the office of State Supervisor of Oil Inspection, or the duties devolved upon the deputy inspectors, until such time as it shall be first established by adjudication of a competent tribunal that said Adam H. Felker, has a superior title to the said office of State Supervisor of Oil Inspection or until the further order of the court.' That an appeal was taken from the said judgment to the Supreme Court of the State of Indiana, which thereafter affirmed said judgment, as officially reported in 188 Ind., beginning at page 364.

"17. That said injunction continued in force and effect until after the 25th day of June, 1918. That neither this plaintiff nor this defendant was a party to said action, but that the relationship of each to the parties and the subject-matter thereof was such that said temporary injunction operated to and did restrain the inspection of defendant's oil and gasoline by anybody else than the plaintiff during the entire period from July 7, 1917, to June 25, 1918, both inclusive, and did restrain the defendant from disputing plaintiff's right to inspect it as the lawful inspector of oils, so far as any right of an inspector of oils to do so might exist, and operated to and did enable the plaintiff to act without hindrance as an inspector of oils, and that during the entire time when plaintiff made all the inspections

for which he is now suing to recover fees the said injunction was in force.

"18. That in an action of quo warranto brought originally on or about August 18, 1917, in the Superior Court of Marion County, Indiana, by the State of Indiana on relation of said Adam H. Felker against the said Marion Caldwell to try title to the said office of State Supervisor of Oil Inspection, to which action neither this plaintiff nor this defendant was made a party, the Supreme Court of Indiana, on the 27th day of June, 1918, decided that pursuant to said appointment by the said State Geologist the said Adam H. Felker was the lawfully appointed State Supervisor of Oil Inspection, and was entitled to said office and that the act approved March 11, 1901, entitled 'An Act regulating the inspection of oil and other petroleum products, providing penalties for its violation, repealing all former laws and laws in conflict therewith,' was unconstitutional.

"19. That during the entire period from July 2nd, 1917, to June 25th, 1918, the said Adam H. Felker was at all times ready, able and willing to perform the duties of the office of State Supervisor of Oil Inspection, and the several deputies appointed by him were ready, able and willing to perform the duties of the office of inspectors of oils, but they were each and all prevented from doing so by said injunction.

"20. That at all times from and after July 7, 1917, and continuously at all times when the plaintiff made the several inspections of kerosene and gasoline, for the inspection of which he is seeking to by this action recover fees, the plaintiff and the said Marion Caldwell both knew that the said Adam H. Felker claimed to be the duly appointed and qualified State Supervisor of Oil Inspection by virtue of his said appointment by the State Geologist, and that his said deputies claimed to be dep-

uty inspectors of oils by virtue of appointments by the said Felker, and that they severally claimed to be entitled to the possession and emoluments of the said offices and entitled to perform the duties thereof. (Signature of Judge.)"

Upon the foregoing facts the court concludes the law to be as follows: (1) That Marion Caldwell was the *de facto* state supervisor of oil inspection for the State of Indiana at the time of the appointment of the plaintiff and continuously thereafter while the plaintiff did the inspection work for which a recovery is sought in this action. (2) That the law is with the plaintiff and that the plaintiff is entitled to recover from the defendant on account of the inspection of kerosene the principal sum of $611.93 with interest thereon in the sum of $187.36 making a total for the inspection of kerosene in the amount of $799.29. (3) That the plaintiff is entitled to recover from the defendant on account of the inspection of gasoline the principal sum of $457.72 with interest thereon in the sum of $141.44, making a total for the inspection of gasoline in the sum of $599.16. (4) That the plaintiff is entitled to recover from the defendant for the inspection of both kerosene and gasoline the total sum of $1,398.45. (5) That the plaintiff is entitled to recover from the defendant his costs herein laid out and expended taxed at $ . . . . . . . To which conclusions of law and to each one thereof separately and severally defendant at the time objects and excepts.

And it was ordered by the court that the foregoing special finding of facts and the conclusions of law thereon be filed with the clerk and made a part of the record in said cause and thereupon said findings of facts and conclusions of law were filed with the clerk. The judgment rendered was in the language following: "Come now the parties by counsel, and the court having

heretofore stated and filed in this cause its special findings of facts, and stated its conclusions of law thereon, and the same having been heretofore duly entered of record, the court now renders judgment thereon accordingly. It is therefore considered and adjudged that the plaintiff have and recover of and from the defendant in the sum of $1,398.45, together with his costs in this action by him laid out and expended and taxed at $......"

Afterward appellant filed its motion for a new trial and the court overruled the motion, to which the appellant at the time excepted and was given thirty days in which to file all bills of exception. Appellant thereupon prayed an appeal and within the time allowed therefor presented its bill of exceptions which was approved, signed and sealed by the court and filed. From the judgment thus rendered the appellant appealed and assigned error.

The appellant says that the court erred in overruling its motion to strike out parts of the complaint. The parts of the complaint moved to be stricken out

1. by the appellant were those parts referring to the inspection of gasoline. Appellant claiming that under the Act of 1881, under which the inspections were being made and under which the inspector was acting, the inspection of gasoline was not authorized. This question was considered and decided by this court in the *Standard Oil Co.* v. *Henry* (1922), 192 Ind. 171, 133 N. E. 742, contrary to the claim made by appellant.

Appellant also claims that the court erred in overruling appellant's demurrer to the complaint. The objections to the complaint as pointed out by the

2. memorandum filed with the demurrer are that the plaintiff, being a *de facto* officer and not having the title to the office cannot recover any compensation for services therein rendered. This question

was also decided adversely to appellant's claim in the *Standard Oil Co.* v. *Henry, supra.*

Appellant also claims that the complaint shows no cause of action of the plaintiff for the cost of fees for the inspection of gasoline and that any recovery **3, 4.** awarded by the court upon the complaint would amount to the taking of the defendant's property without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States. These questions were also decided contrary to the claim of this appellant in the *Standard Oil Co.* v. *Henry, supra.* In that case it was held that no federal question was presented. See, 260 U. S. 733, 43 Sup. Ct. 94, 67 L. Ed. 487. It is not denied that the law requiring the inspection of oils by an inspector acting under the laws of the State of Indiana is a law authorized under the police powers of the State. The Fourteenth Amendment to the Constitution of the United States does not impair a police power of the State. See *State* v. *Richcreek* (1906), 167 Ind. 217, 5 L. R. A. (N. S.) 874, 119 Am. St. 491, 10 Ann. Cas. 899; *Levy* v. *State* (1903), 161 Ind. 251; *City of Aurora* v. *West* (1857), 9 Ind. 74; *Hanly* v. *Sims* (1910), 175 Ind. 345; *Barbiere* v. *Connolly* (1884), 113 U. S. 27, 5 Sup. Ct. 357, 28 L. Ed. 923; *Mugler* v. *Kansas* (1887), 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205.

The appellant also contends that any judgment granted against the defendant as prayed for in the complaint would be unconstitutional, illegal and void **5.** in that it would be in contravention of and repugnant to Art. 1, §21 of the Bill of Rights of the Constitution of the State of Indiana. Appellant is not sustained by authority in this contention. In *City of Aurora* v. *West, supra,* it is held that it is only the taking of specific pieces of property of an individual by virtue of the right of eminent domain, without com-

pensation that is prohibited by the Constitution. That the prohibition does not extend to the taxing power. *State* v. *Richcreek, supra; Hanly* v. *Sims, supra.*

The defendant also complains that the inspection fees constituted an unlawful burden on interstate commerce. As the act of 1881 provides only for the costs of inspection and is not a revenue measure, it would not be an unlawful burden upon interstate commerce even if regarded as applicable thereto. *Texas Co.* v. *Brown* (1921), 258 U. S. 466, 42 Sup. Ct. 375, 66 L. Ed. 721. But in the present case the special findings show that the inspections were made by appellee from the samples taken voluntarily from its car tanks after said cars had been placed upon side tracks in position preparatory to unloading same in stationary tanks from which the sales were made to purchasers; that the practice of taking the samples for inspection from car tanks was pursuant to a mutual agreement and understanding with defendant and the several agents of defendant at the various places of inspection. Under this state of facts there was no question of interstate commerce involved. See *Texas Co.* v. *Brown, supra.*

The second, third, fourth and fifth paragraphs of answer each consist of a special denial of certain facts alleged in the complaint together with a number of conclusions of law as interpreted by appellant and present no issuable fact upon which the plaintiff could take issue. A demurrer to the third and fourth paragraphs of said answer was correctly sustained by the trial court. A general denial was filed by plaintiff to the second and fifth paragraphs of answer but this general denial raises no issue of fact, hence all questions of fact determined in this case were determined upon the issues presented by the complaint and the general denial thereto.

VOL. 195—16

Under his assignment of error that the court erred in overruling appellant's motion for a new trial the appellant claims the court erred in excluding testimony offered by appellant by the witness, John C. Taylor, as to reasonable cost and expense of the inspections made by him and that the evidence received together with the testimony offered showed clearly that the inspection fees claimed by appellee were so greatly in excess of the cost of inspection as to impose a burden on interstate commerce. It appears from the finding of facts that the fees charged were the property of the inspector and that all the fees collected went for the purpose of paying the inspector for his services and expenses; and it further appears by the findings that the inspections were made from samples voluntarily taken by the defendant and submitted to the inspector, so that even if the inspection law had been considered a revenue measure it would not have been an unlawful burden upon interstate commerce because it would not be applicable thereto. The court was therefore correct in excluding the testimony offered by appellant in regard to costs and expense of the inspections made by appellee because such evidence was not relevant or competent to prove any issue in the case.

Appellant contends that the court below erred in permitting appellee to recover interest. A fair construction of the act of 1881, relative to fees provides for the payment of fees at the time the oil was inspected by the appellee, but it appears from the finding of facts that the inspector at the end of each month made out a statement of the fees due him for the preceding month and demanded of appellant payment. This rendition of monthly statements showing the amounts in detail accompanied by a demand for payment entitled appellee to recover interest from the time such demands were made. The appellant in op-

posing the claim cites a number of cases which may be grouped into two general classes, such as personal. injury cases and taxing obligations created by law. These have no application to the demands of the character asserted by plaintiff in this case.    In many cases interest has been allowed on fees required to be paid by foreign insurance companies after delay in payment. *Travelers Ins. Co.* v. *Fricke* (1898), 99 Wis. 367, 74 N. W. 372, 78 N. W. 407, 41 L. R. A. 557.    And where interest is allowed as damages for default the legal rate must govern.    *O'Brien* v. *Young* (1884), 95 N. Y. 428, 47 Am. Rep. 64; *Sanders* v. *Lake Shore, etc., R. Co.* (1883), 94 N. Y. 641; *State* v. *Guenther* (1894), 87 Wis. 673, 58 N. W. 1105.    In *United States* v. *Mexican International R. Co.* (1907), 154 Fed. 519, it is held that interest is recoverable by the United States on unpaid duties where the amount due is liquidated and clearly ascertained and demand has been duly made on the importer.    It has been settled both here and in England that under such circumstances the duties were a debt accruing to the government from the time of actual importation.    If the duties are personal debts against the importer accruing to the government from the time of importation why should not interest be added when the importer illegally withholds the principal sum.    The fees of appellee as oil inspector became a debt accruing to him from appellant at the time of the inspection and he would be entitled to interest at the legal rate which is recognized in this state by statute, §7952 Burns 1914, at six per cent. from the time demand is made for payment.

In *O'Brien* v. *Young, supra,* the question in that case was one of interest on a judgment, and it was held that the judgment is not a contract or obligation within the exception in the act relating to interest.    It seems that these conditions apply only to contract or obligations

resting upon voluntary mutual agreement of the parties. A judgment is an obligation of record and interest thereon is given, not on the principal or contract, but as damages for delay in performing the obligation; the measure of which is the statutory rate.

In *Sanders* v. *Lake Shore, etc., R. Co., supra,* it is held that where interest is allowed not by any contract to pay but simply as damages because of default in the discharge of an obligation, the legal rate of interest must govern.

In *State* v. *Guenther, supra,* it is held that a state treasurer who had failed to pay over moneys due the state to his successor in office is chargeable with interest thereon at the rate in force during the period of default as varied by legislation.

In *Travelers Ins. Co.* v. *Fricke, supra,* it is held that the license fee assessed against an insurance company is not a tax but a condition precedent to plaintiff company enjoying the privilege of doing business in the state and by accepting such license and doing business in and under it the company binds itself to comply with the law and unpaid license fees bear legal interest from various times when they ought to be paid.

In *Rhodes* v. *O'Farrell* (1866), 2 Nev. 60, it is held that debts are not confined to obligation for the payment of money arising on contract; it means a legal obligation or liability to pay a sum certain, and it makes no difference as to how that liability arises, whether it be by contract or is imposed by law without a contract. Whether such obligation or liability should be evidenced by a promissory note or a judgment rendered for trespass or slander, whenever it becomes a legal liability for a definite sum of money due from one person, corporation or government, to another, it is technically a debt.

Although there are some cases exhibiting a tendency

to disallow interest on a special liability created by statute, most of those cases were decided under statutes which either imposed a penalty or designated the damages recoverable. The cases cannot be construed to mean that, irrespective of the subject-matter or the language of the statute, there is a distinction between common law and statutory liabilities; assuming that the plaintiff's claim belongs to the class of claims on which interest is recoverable, there seems to be no reason for disallowing interest simply because the liability is created by statute. There are cases which notwithstanding the fact that the liability is created by statute, the right to recover interest is treated as being on the same basis as in other actions for tort. *Alabama, etc., R. Co.* v. *McAlpine & Co.* (1883), 75 Ala. 113; *Atlanta, etc., R. Co.* v. *Brown* (1908), 158 Ala. 607, 48 So. 73; *Varco* v. *Chicago, etc., R. Co.* (1882), 30 Minn. 18, 13 N. W. 821; *Ide* v. *Boston, etc., R. Co.* (1909), 83 Vt. 66, 74 Atl. 401. Under a statute which, though it makes a garnishee liable for the amount of money in his possession at the time of the garnishment, is silent as to interest, it has been held that from the time when the judgment is entered in the original action compensation by way of damages should be allowed for delay in payment. *Eau Claire Nat. Bank* v. *Chippewa Valley Bank* (1905), 124 Wis. 520, 102 N. W. 1068, 109 Am. St. 966. Under statutes imposing on stockholders liability for the debts of the corporation, a stockholder has been held liable for interest due by the corporation if the allowance of such interest does not swell the recovery beyond the maximum amount for which he is liable. *Wells, etc., Co.* v. *Enright* (1900), 127 Cal. 669, 60 Pac. 439, 49 L. R. A. 647; *Grand Rapids Sav. Bank* v. *Warren* (1884), 52 Mich. 557, 18 N. W. 356; *Wheeler* v. *Millar* (1882), 90 N. Y. 353; *Handy* v. *Draper* (1882), 89 N.

Y. 334. Penalties imposed by statute have been held not to bear interest. Fees of an oil inspector are not penalties.

Section 4, Acts 1881 p. 571, fixing fees for inspection of oils is as follows: "Said Inspector or deputy Inspector shall be entitled to demand and receive from the owner or party calling on him, or for whom he shall perform the inspection, the sum of forty cents on each barrel, cask or package inspected, where the number inspected and to be inspected at one time for the same person or firm does not exceed two. Where the number exceeds two, and does not exceed ten, fees as above on first two, and twenty cents on each additional. Where the number exceeds ten, and does not exceed forty-five, fees as above on first ten, and ten cents on each additional. Where the number exceeds forty-five, fees on the first forty-five as above, and three cents on each additional barrel, cask or package above forty-five. Fees accruing shall be a lien on the oil inspected. It shall be the duty of every Inspector or deputy Inspector to keep a true and accurate record of all oils so inspected and branded by him, which record shall state the date of the inspection, number of barrels, and the name of the person for whom inspected, and such record shall be open to the inspection of any and all persons interested. And every deputy Inspector shall, on the first of each and every month, make a true and accurate return to the State Inspector of all such inspections for the preceding month, giving the quantity inspected, the date of inspection, and the name of the person for whom it is inspected. On the second Monday in January of each and every year, the State Inspector shall make and deliver to the Governor of the State an anual report of the inspections by himself and deputies for the preceding calendar year."

In this statute is found authority for charging fees

on each tank car according to the number of barrels forming the bulk contents of such tank car. It appears from the finding of facts that the appellee has done this and has made an itemized account showing the date of each inspection, number of barrels inspected and amount of fees charged and has made a demand of appellant for such fees on the dates set out in such itemized statement. The statute contemplates the payment of the fees at the time the work is done. We hold that the appellee was entitled to interest at the legal rate of six per cent. from the time demand for payment was made. There was no error in overruling the demurrer to the complaint or in sustaining the demurrers to the second and fifth paragraphs of answer. We find no reversible error in the record.

Judgment affirmed.