THE MAULE COAL COMPANY, ETC., *v.* PARTENHEIMER, ADMINISTRATOR.

[No. 18,767. Filed December 13, 1899. Petition for substitution of party overruled June 19, 1900.]

STATUTES.—*Subject-Matter.—Title.—Mines and Mining.—Constitutional Law.*—The act of 1891 (Acts 1891, p. 57) regulating the operation of coal mines and vesting the right of action for the recovery

for the death of an employe in certain persons, is not invalid as embracing more than one subject and matters properly connected therewith, nor because of its failure to express the subject of the act in the title thereof, under the provision of article 4, §19 of the State Constitution that "every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title." *pp. 104-109.*

MINES AND MINING.—*Death by Wrongful Act.—Action.—Parties.— Damages.*—Under the provision of the act of 1891 (Acts 1891, p. 57) relating to coal mines, vesting the right of action for the recovery for the death of an employe in certain persons therein named, the administrator of a deceased employe of a coal mining company, operated under the provisions of said act, cannot maintain an action for the death of such employe, caused by an explosion of gas in the mine, although decedent was employed therein as a blacksmith at the time of the accident, and was not engaged in actually mining coal. *p. 109.*

APPEAL AND ERROR.—*Parties.—Substitution.*—Where a cause was reversed on appeal for the reason that the right of action was vested in a person other than appellee, the person authorized to maintain the action in the court below cannot be substituted as a party during the time granted for filing a petition for a rehearing and be allowed to occupy the same position, and exercise the same rights, as though he had been originally a party to the action. *pp. 109-112.*

From the Gibson Circuit Court. *Reversed.*

*A. Gilchrist, C. A. De Bruler, L. W. Gudgel, W. H. H. Miller* and *J. B. Elam,* for appellant.

*L. C. Embree,* for appellee.

JORDAN, J.—This action was commenced and prosecuted in the lower court by appellee, as administrator of the estate of Robert Poneleit, against appellant, the Maule Coal Company of Princeton, Indiana, to recover damages on account of the death of his decedent caused by the alleged negligence of appellant.

The complaint is in three paragraphs and it discloses that the defendant, appellant herein, is a corporation organized under the laws of this State and is engaged in operating a certain coal mine in Gibson county, Indiana. This mine, at the time of the fatal accident, is alleged to have been over the depth of 400 feet, and was reached by an open

shaft. Appellee's decedent, at and prior to the date of his death, was in the employ of appellant at work about this mine in the capacity of a blacksmith. The complaint gives a description of the manner in which the mine was ventilated, and it appears, from the averments therein, that dangerous and explosive gases collected in the mine, which the defendant neglected to expel by necessary appliances provided for ventilation, and that the persons employed therein were not provided with suitable safety lamps so as to prevent an explosion of such gases. It further appears from the complaint that appellee's decedent, on the day of the accident, was directed by appellant's superintendent to go down into the mine to repair a door; that he was supplied with an open miner's lamp, and assurances were given him that the mine was free of gas and that it was safe for him to work therein. After he had descended into the mine and while there engaged in doing the work mentioned, appellant, it is charged, allowed certain cages, which ran up and down the shaft and connected the mine with the open air, to remain suspended in the shaft in such a position as to interfere with the ventilation of the mine; and that it further negligently permitted certain fans, intended and used to ventilate the mine, to be stopped, on the day of the accident, for over one hour; by reason of which a large amount of gas, which had accumulated in the mine, ignited from the fire of open lamps to which it was exposed; and that such gas exploded with great force and thereby caused the death of the decedent.

It is also charged that Robert Maule, employed by appellant as superintendent and mine boss, was incompetent for the discharge of the duties imposed upon him as such mine boss; and the complaint further discloses that the number of men, employed by appellant in the operation of the mine, was ten and over; and it is also disclosed that the deceased left surviving him a widow and certain minor children dependent upon him for support; and that plain-

tiff was duly appointed administrator of his estate; and it further appears, under the averments of the pleading, that the decedent, at the time of the accident, was not guilty of contributory negligence. A demurrer for insufficiency of facts was overruled to each paragraph of the complaint, and, upon the issues joined, a trial by jury resulted in a verdict in favor of appellee and, over appellant's motion for a new trial, judgment was rendered thereon.

It is first contended by appellant's counsel that the complaint is insufficient on demurrer for the reason that the action can not be prosecuted or maintained by appellee as administrator of the deceased employe. It is insisted that the action falls within and is governed by the provisions of an act of the legislature pertaining to coal mines, approved March 2, 1891 (Acts 1891, p. 57, §7461 *et seq.* Burns 1894), and that the right of action, which appellee seeks to enforce, is lodged by the legislature, under the thirteenth section of that statute, in the particular persons therein designated. This section reads as follows: "That for any injury to person or persons or property occasioned by any violation of this act, or any wilful failure to comply with any of its provisions, a right of action against the owner, operator, agent or lessee shall accrue to the party injured for the direct injury sustained thereby, and in case of loss of life by reason of such violation, a right of action shall accrue to widow, children, or adopted children, or to the parents or parent, or to any other person or persons who were before such loss of life dependent for support on the person or persons so killed, for like recovery for damages for the injury sustained by reason of such loss of life or lives." If this contention can be sustained, it will necessarily result in a reversal of the judgment, for the rule of practice is well settled that a demurrer to a complaint, for insufficiency of facts, calls in question the right of the plaintiff to maintain the action. *Board, etc.,* v. *Kimberlin,* 108 Ind. 449, and cases there cited.

Counsel for appellee, however, insists that section thirteen, *supra*, which confers the right of action upon persons in the order therein named, can not be considered as controlling in this action for the reason that it must be held invalid when the law, of which it forms a part, is tested by section 19, article 4, of the State Constitution, which provides that: "Every act shall embrace but one subject and matters properly connected therewith; which subject shall be expressed in the title. But if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title."

The contention is that the statute in controversy violates this provision of our organic law in two respects: (1) That it embraces more than one principal subject; (2) that there is no general subject expressed in the title of the act. It is insisted that the statute is clearly open to the first objection because the first five sections thereof relate exclusively to the subject of weighing coal delivered from coal mines; and, hence, it is argued, that the section vesting the right of action in the widow or children of a husband and father, whose death is caused by the violation of the provisions of the act in question, is wholly incongruous to the general subject, which, it is insisted, is that relating to weighing coal; and, therefore, is not a matter germane to or properly connected with the general subject.

The validity of the law being assailed, that question must necessarily be first determined. The title of the act in dispute is as follows: "An act regulating the weighing of coal, providing for the safety of employes, protecting persons and property injured, providing for the proper ventilation of mines, prohibiting boys and females from working in mines; conflicting acts repealed, and providing penalties for violation." The statute is divided into some twenty-four sections, some of which, as heretofore stated, regulate the weighing of coal delivered from any coal mine in this State,

operated by any owner, agent, or lessee of such mine; while others pertain to the manner in which the mine shall be supported in order to protect persons working therein; and others provide for the proper ventilation of the mine, so as to keep it at all times free from "standing gas"; and also provide for or designate means by which the proper ventilation of a coal mine may be secured; and further provides that a competent mining boss shall be employed, who shall keep a careful watch over the ventilating apparatuses and airways of the mine, etc. An inspection of the statute clearly discloses that the general subject, covered by the legislation therein, is one concerning or relating to coal mines, and that the part thereof which vests the right of action for a recovery of damages arising out of the death of a person caused by the violation of any of its provisions, or wilful failure to comply therewith upon the part of the owner, operator, agent, or lessee, in the widow or children of the deceased, or other persons in the order named in the section in question, is incidental or auxiliary to the principal subject upon which the legislation is had; and, consequently, is a matter properly connected therewith.

It is true that this statute may be said to embrace a plurality of objects or purposes which the legislature had in view, and towards which, in order to carry them into effect, the legislation, under the act in question, was directed. It is obvious, however, that such legislation includes only one principal or general subject which, as previously said, is that concerning or relating to coal mines; and it is equally clear, we think, that the several provisions contained in the body of the act are matters or details incidental to this general subject and, as such, are properly connected therewith. *State* v. *Gerhardt*, 145 Ind. 439, 33 L. R. A. 313, and cases there cited.

It may be asserted that the constitutional restriction is obeyed by the legislature in the enactment of a law, if its provisions relate to the one subject as indicated by the title,

and in some reasonable sense may be considered as auxiliary to such subject. The title of the law in controversy is not a model and, perhaps, is open to criticism. It at least may be said, however, that it substantially responds to the mandate of the Constitution. The form and terms employed in framing the title possibly operate to give expression, by parts, to the general subject to which the proposed legislation relates. When these parts, as expressed in the title, are taken and considered collectively, they constitute such a title as serves fairly to point out or disclose the general subject-matter, coal mines, over which the legislature proposes to legislate; and this renders it sufficient.

It is true, also, that the title, as framed, may be said to reveal that the legislators had several matters or purposes in view, some of which may be enumerated as follows: (a), to regulate the weighing of coal; (b), to provide for the proper ventilation of mines; (c), to prohibit boys and females from working in coal mines. While these indicated that the proposed legislation embraced several purposes which were intended to be carried into effect thereby, still they did not constitute each a distinct, separate, general subject, as appellee would seem to insist, but each and all were matters incidental to, and properly connected with the general subject concerning coal mines to which the act was intended to apply.

To express the subject of a statute in the title, in compliance with the requirement of the Constitution, no particular form or terms are exacted, nor is it essential that such subject be expressed with precision. The title will sufficiently conform to the command of the Constitution if it be so framed and worded as fairly to apprise the legislators, and the public in general, of the subject-matter of the legislation, so as reasonably to lead to an inquiry into the body of the bill. The constitutional requirement may be interpreted to mean that the act and its title must correspond, not literally but substantially, and such corre-

spondence is to be determined in view of the subject-matter to which the legislation relates. *Benson* v. *Christian*, 129 Ind. 535; *State* v. *Kolsem*, 130 Ind. 434, 14 L. R. A. 566; *Lewis* v. *State*, 148 Ind. 346; *Gustavel* v. *State*, 153 Ind. 613; *McCommons* v. *English & Co.*, 100 Ga. 653, 28 S. E. 386.

In *Lewis* v. *State, supra,* we said: "The degree of particularity with which the title of an act is to express the subject thereof is not defined by the Constitution, and rests with the legislature. Courts, in this respect, are inclined to entertain and adhere to a liberal rule, and will not condemn an act of the legislature for the reason alone that the subject thereof is not as fully expressed as it otherwise might have been."

If we even entertained a reasonable doubt as to whether the subject of the act in question was as clearly expressed in its title as the Constitution required, in obedience to a well settled rule, we would be bound to resolve such doubt in favor of the validity of the statute. *State* v. *Tucker*, 46 Ind. 355. We conclude, therefore, that the title is sufficient and that the act does not embrace a plurality of subjects and is not open to the constitutional objections urged by counsel for appellee.

The validity of the law being affirmed, at least to the extent of the attack made by appellee, it is evident, we think, that it must be held to apply to all employes who may be injured or killed in the line of duty while engaged in or about a coal mine where ten men or over are employed. This is certainly within the meaning and contemplation of the law. That the particular mine, at which appellee's decedent was employed when killed, falls within the provisions of the statute in question, is fully disclosed by the complaint, as it appears from that pleading that ten men and over were employed by the defendant in its coal mine.

By section twenty-two of the act, coal mines, in which

less than ten men are employed, are the only ones which are excepted from its provisions. The thirteenth section of the statute, as we have seen, expressly vests the right of action, which appellee, as administrator, is seeking to enforce, in the widow of the deceased; and we are satisfied that she is the person authorized to maintain and prosecute this action.

Section 285 Burns 1894, §284 R. S. 1881 and Horner 1897, which empowers the personal representative to maintain an action for damages, where the death of his decedent has been caused by the wrongful act of another, is general in its nature and character, while the provisions in the law relating to coal mines are special, and apply only to cases connected with that act; and, therefore, must control in the case at bar.

The statute in question is quite similar to that enacted by the legislature of Illinois in 1872; in fact, its provisions, in the main, appear to have been borrowed from the law of that state. By the latter law, where the death of a person is the result of any wrongful violation or wrongful failure, upon the part of the mine owner or operator, to comply with its provisions, a right of action, for the recovery of damages on account of such death, is given to the widow of the deceased, or to his lineal heirs, adopted children, or other dependent persons. In the case of *Litchfield Coal Co.* v. *Taylor*, 81 Ill. 590, it was held that the widow of a person, who was killed by the wrongful conduct of the defendant coal company, in using uncovered cages for the purpose of conveying its miners into and out of its mine, and in hoisting coal from the mine at the same time when the miners were being hoisted therefrom, was the proper person to maintain the action, and that the administrator of the deceased husband was not authorized to institute or maintain the action under the general statute of that state which empowers a personal representative of the deceased person, whose death was due to the wrongful act of

another, to sue for and recover damages on account of such death.

In view of the plain purpose of the statute and in obedience to the rule well affirmed by the authorities, we can see no escape from holding that this action, under the facts, falls within the terms of the act in controversy, and that the surviving widow of the deceased, and not his administrator, is the proper person to sue for damages resulting from his death; and we are constrained to conclude that appellee can have no standing in court to maintain this action. In support of this holding, in addition to the authorities cited, see the following cases: *Spiva* v. *Osage, etc., Co.,* 88 Mo. 68; *Gibbs* v. *City of Hannibal,* 82 Mo. 143; *McNamara* v. *Slavens,* 76 Mo. 329; *Shepard* v. *St. Louis, etc., R. Co.,* 3 Mo. App. 550; *McClure* v. *Alexander* (Ky.), 24 S. W. 619; *McCormack* v. *Terre Haute, etc., R. Co.,* 9 Ind. 283.

The contention of appellee, that, by reason of the fact that his decedent appears to have been employed at the coal mine as a blacksmith, at the time of the fatal accident, and was not engaged in actually mining coal, must result in excepting this case from the provisions of the statute in controversy, is without force.

As to the right of the widow to be substituted as plaintiff in this action, in the place of appellee, we intimate no opinion.

It follows, for the reasons stated, that the court erred in overruling the demurrer to each paragraph of the complaint; for which error the judgment is reversed, and the cause is remanded to the lower court for further proceedings not inconsistent with this opinion.

### On Petition to Substitute Another as Party Appellee.

Jordan, J.—Appellant, among the errors assigned in this appeal, called in question, first, the sufficiency of the com-

plaint upon demurrer. We sustained this contention, and adjudged, under the facts alleged in the complaint, that appellee could not maintain this action for the reason that the right of action, if any existed, was lodged, under the statute, in the surviving widow of the deceased and not in his administrator. For insufficiency of the complaint in this respect, the judgment recovered by appellee below was reversed and the cause remanded to the lower court.

Within the sixty days allowed for a petition for rehearing, Josephine Poneleit, widow of appellee's decedent, presented a petition to this court whereby she prays to be substituted as a party appellee in this appeal in the place of the administrator, the original and sole plaintiff below and sole appellee in this appeal; and she further prays that such proceedings thereafter be had that the judgment heretofore reversed be affirmed in her favor and for her benefit. The administrator also appears and joins in the prayer of the petitioner and declares in his application that he waives any rights which he may have in the case.

Counsel for the petitioner insists that she ought to be substituted as appellee for the following reasons: "(1) Because there is no substantial reason why such relief should not be granted; (2) because the granting of the relief will result in substantial justice; (3) because the cause of action has been well pleaded and amply established by proof, and the decedent's family have been in court from the beginning as the real parties in interest; (4) because the judgment will operate as a bar to any subsequent action growing out of the same matter; (5) because the defense that has been waged to the action is purely technical, in nowise affecting the merits of the action; (6) because it is the intent and policy of the law that the family of one whose death has been caused by the wrongful act or omission of another shall be compensated in damages for the loss, and that justice in this respect shall be administered 'speedily, and without delay'; (7) because no good purpose

Maule Coal Co. *v.* Partenheimer, Adm.

can be served by putting these helpless people to the toil, delay, and needless expense of getting together again the witnesses and going over anew the same trial, against the same defendant, when the court can see from the record that the only injustice that has been done has been in giving too small a verdict."

It is argued that if the widow is entitled to prosecute the action provided by the coal mining statute in controversy, then, under such circumstances, there can be no sufficient reasons urged by appellant in this action why she ought not to have the benefit of the judgment already rendered in favor of the original plaintiff, without being subjected to any further proceedings upon her part in the lower court. Or, in other words, it is contended in effect, that this court ought to vacate the judgment of reversal, permit the original appellee to be supplanted by the widow of his decedent, and then allow her, in her own proper person, to defend this appeal in like manner as though she had recovered as plaintiff below, and had been made the original appellee in the appeal.

Aside from the bare assertions of her counsel, we are cited to no authority whatever to support this unique or novel feature in appellate procedure. Even though it could be conceded that the petitioner at any time had the right to be substituted as appellee, in the place of the administrator, after the cause had been docketed in this court, she certainly would be required to make her application for substitution in due season and not delay until after the judgment had been reversed and the cause remanded.

This court has no original but only appellate jurisdiction in actions of the character upon which this appeal is based, and it is authorized to hear and determine such causes only upon the record as it has been made in the trial court when certified up by its clerk. The petitioner, however, seeks to have this court in effect make a new and different record, from that originally certified in the lower court, by sub-

stituting as plaintiff below and appellee here a new and entirely different person. If, under the circumstances, such procedure could be sustained, it would follow that whenever it was disclosed to this court, in the appeal of a cause, that the party who had successfully waged the contest below had no warrant under the law to maintain the action, for the reason that the right to do so was lodged in another and different person, then the party who had been mistaken in respect to his rights might be permitted to withdraw and the party authorized to maintain the action in the lower court be substituted in his stead as a party for the first time in this court and be allowed to occupy the same position and exercise the same rights as though he had been originally a party to the action. That such practice is not authorized under our appellate procedure certainly can not be controverted.

While we regret the delay, inconvenience, and expense to which, as it is so earnestly insisted, the petitioner will be subjected in her endeavor to recover damages of appellant for the loss of her husband, in the event we deny her petition, still we as a court must be controlled in this case as in others by the well settled rules of the law, and we possess no authority to waive them on behalf of the petitioner but are compelled to enforce them against her in like manner as any other person.

The petition to substitute is therefore overruled at the cost of the petitioner.