STITH PETROLEUM COMPANY *v.* DEPARTMENT OF AUDIT AND CONTROL OF THE STATE OF INDIANA ET AL.

[No. 26,687. Filed January 14, 1937. Rehearing denied April 2, 1937.]

*Arthur T. Mayfield, Louis B. Ewbank* and *Claude H. Anderson,* for appellant.

*Omer Stokes Jackson,* Attorney-General, and *Joseph W. Hutchinson,* Deputy Attorney-General, for appellees.

TREMAIN, C. J.—The appellant, for itself and all others similarly situated, filed this action in the court below, praying that the defendants be enjoined and restrained from enforcing the provisions of Senate Bill No. 173, being Chapter 83 of the Acts of the General Assembly of 1919, for the reason that said Act is unconstitutional; that it violates the Fourteenth Amendment of the Federal Constitution and Section 23, Article 1, of the State Constitution, in that it deprives the appellant and all others similarly situated of its and their property without due process of law, and denies to them the equal protection of the law; that the Act is a revenue and not a regulatory measure; that it originated in the Senate instead of in the House of Representatives, as provided by Section 17, Article 4, of the State Constitution; that it violates Section 19, Article 4, in that its title embraces more than one subject. It is further charged that the Act does not apply to the appellant's operations.

The complaint is very long, embracing thirty-one typewritten pages in the record. It is alleged that the appellant is a corporation organized and doing business under the laws of the State of Indiana with its principal office and place of business in the city of Indianapolis; that it is engaged in the sale and distribution of gasoline, benzine, naphtha, and like products of petroleum

to be used for combustive purposes and other uses, but not for illuminating purposes; that all of said articles are petroleum products. Embraced therein are allegations reviewing the entire history of oil inspection laws and the decisions of the Supreme Court of this state in respect thereto, prior to the enactment of said Chapter 83, Acts of 1919. It includes tables of the amount of kerosene and gasoline sold, the fees collected, and the expenses thereof, both before and after the enactment of said chapter. The evident purpose of such tables is to show the increase in the consumption of gasoline and the amount of fees collected between 1904 and 1935. It is charged that the oil inspectors, provided for in said Act, do nothing more than label the containers of the gasoline; that there are no provisions requiring or prescribing the method of inspection; that the fees collected are paid into the general fund of the State Treasurer and there disbursed; that a much larger sum is being collected than is necessary to pay the inspection fees.

The appellees' demurrer to the complaint for want of facts was sustained by the lower court. The appellant refused to plead further and the court rendered judgment on the demurrer in favor of the appellees. Upon appeal the appellant assigns as error the sustaining of the demurrer to the complaint.

The memoranda to the appellees' demurrer fully presented all questions which this court is asked to review. In a few words it may be said that the complaint asked for an injunction enjoining the appellees from enforcing Chapter 83 of the Acts of 1919 upon the grounds: (1) That the Act does not apply to appellant, and (2) if it does apply, it is unconstitutional.

The first and principal proposition presented by appellant in its brief is that the Act is not an inspection and regulatory law, but is a revenue measure which under the Constitution should have originated in the

House of Representatives; that the inspection fee of four cents per barrel has increased the amount collected after sixteen years to more than five times the amount collected at the time the law was enacted; that as shown by the tables embraced in the complaint, the increase has been gradual; that the law has remained unchanged by the Legislature since 1919, and because of the fact that a large surplus remains after the payment of the inspectors, the Act must be regarded as a bill for raising revenue and is therefore unconstitutional.

Section 17, Article 4, of the State Constitution provides, "that bills for raising revenue shall originate in the House of Representatives." The term "for raising revenue" is confined to bills to levy taxes in the strict sense of the word and does not apply for other purposes which may incidentally create revenue. In *Rosecranz* v. *City of Evansville* (1924), 194 Ind. 499, 143 N. E. 593, the court had under consideration a suit to enjoin the enforcement of Chapter 26, Acts 1923, authorizing the creation of the port city of Evansville. That act was attacked upon the ground that it was a revenue measure and was violative of Section 17, Article 4, of the Constitution. The court said (p. 505):

"Primarily the act was not for the purpose of raising revenue, but to establish port cities. Taxation as provided in the act is but incidental to its real purpose."

Also see *Ex Parte Sales* (1925), 108 Okla. 29, 233 Pac. 186; *Ravitz* v. *Steurele, etc.* (1934), 257 Ky. 108, 77 S. W. (2d) 360; *Stuard* v. *Thompson* (1923), Tex., 251 S. W. 277; *Gillespie* v. *First National Bank* (1908), 20 Okla. 768, 772, 95 Pac. 220.

It is not disputed by the appellant that the products of petroleum are of such character as to be subject to legislative regulation; that as a protection to the public and the general welfare of the people of the state, such products fall within the police power and may be regu-

lated by proper legislation, but the sole argument of appellant is that the Act in question is primarily a revenue measure, made so by reason of the enormous increase in the amount of fees collected due to the increased use of gasoline since 1919.

It is a well recognized rule that the motives controlling the Legislature in the passage of an act cannot be questioned. That department of the state government, as well as the coordinate departments, is presumed to have acted in good faith. At the time of the enactment of Chapter 83, the Legislature is presumed to have had before it and to have had in mind the history and decisions of the courts upon that subject. The most recent decision at that time was the case of *Pure Oil Co.* v. *Minnesota* (1918), 248 U. S. 158, 39 S. Ct. R. 35, decided December 9, 1918. In that case the Supreme Court of the United States had before it the gasoline inspection law of the State of Minnesota, in all respects similar both to the statute and the facts in question. The court there said (p. 161) :

> "In the exercise of its police power a State may enact inspection laws, which are valid if they tend in a direct and substantial manner to promote the public safety and welfare or to protect the public from frauds and imposition when dealing in articles of general use, as to which Congress has not made any conflicting regulation, and a fee reasonably sufficient to pay the cost of such inspection may constitutionally be charged, . . .
>
> "Specifically, state laws providing for the inspection of oils and gasoline have several times been recognized as valid by this court." (Citing authorities.)

The court stated that whether the question of the inspection charge is so excessive as to render the act a revenue measure, and not an inspection law enacted in good faith to promote the public safety and prevent fraud and imposition upon the users of oil and gas, was

the question to be considered by the court in that case. The court said (p. 162):

"In the consideration of this question the discretion of the legislature in determining the amount of the inspection fee will not lightly be disturbed. Its determination is *prima facie* reasonable and the courts will not 'enter into any nice calculation as to the difference between cost and collection; nor will they declare the fees to be excessive unless it is made clearly to appear that they are obviously and largely beyond what is needed to pay for the inspection services rendered.'"

In that case the receipts had more than doubled in a period of five years on account of the increase in the use of gasoline. The court said (p. 164):

"It was obviously impossible for the state legislature to determine accurately in advance either what the receipts from or the cost of inspection would be, and having regard to the period of rapid increase in the use of gasoline, through which the country was passing in the years under consideration, and to the action of the legislature in reducing the fee, we cannot consent to impute to that body a purpose other than to conform to the requirements of the Constitution when enacting this legislation."

Chapter 83 fixed the fee at four cents per barrel for inspection. Prior thereto the fee had been five cents per barrel. As stated by the Supreme Court of the ██ United States, the Legislature could not determine in advance what increase or decrease might come in later years, but upon the question of its good faith, the Legislature, among other facts, had before it the then recent decision just referred to. It does not seem to be argued seriously by the appellant that the Act in itself, without consideration of previous and subsequent history, is invalid, but the appellant contends that the allegations of the complaint showing a large increase in the use of gasoline from 1904 to 1935, and the failure of Legislatures subsequent to 1919 to reduce

the inspection fees, constitute facts sufficient to condemn the statute and make it a revenue instead of a regulatory measure. Seventeen years have elapsed since the enactment. Could the Legislature at that time foresee the enormous increase in the use of gasoline? If the Act was regulatory at the time of its enactment, who would dare say that because of the increased consumption of gasoline, necessarily increasing the amount of fees collected, the Act is now converted into a tax measure? A statute cannot be overthrown upon that ground. The Legislature now in session cannot foresee what seventeen years hence may develop as to the use of gasoline. Diesel engines may come into general use and produce motive power from the cheapest greases, or electricity may be produced and supplied everywhere so cheaply that gasoline will cease to be used for motive power, and the fees collected would not be sufficient to pay for the inspection. Would the appellant then say that the statute had been converted into a regulatory measure and properly originated in the Senate? Laws will not be declared unconstitutional because of changed conditions in after years, made possible by the development of science and the ingenuity of man. If the Act in question is to be changed, that task is for the Legislature and is not to be performed by the court. The Constitution of Indiana is well adapted to the need of the day and to an expanding and progressive state. The powers given to the Legislature are sufficient to meet the social, political, and economical changes as they appear.

The title of the Act shows that it is a regulatory measure, and reads as follows:

"AN ACT providing for an (and) requiring the inspection and branding of products of petroleum before the same shall be offered for sale, or sold, or consumed, for illuminating purposes within the State of Indiana, and providing for, and requiring,

the inspection and branding of gasoline, benzine, naphtha and like products of petroleum under whatever name called, prescribing tests for inspections and the manner of making inspections, imposing duties upon the state food and drug commission thereunder, and fixing his compensation for the discharge of the duties imposed upon him, providing for the appointment of oil inspectors, prescribing their duties and fixing their compensation, fixing inspection fees and providing for their collection, providing penalties for violations of the act, repealing laws in conflict therewith, providing that after midnight, September 30, 1919, an act of the seventy-first general assembly entitled, 'An act regulating the inspection of oil, gasoline, and other petroleum products, providing penalties for its violation, repealing all former laws and laws in conflict therewith and declaring an emergency.' shall have no force and effect and shall be repealed, and providing the time when the same shall be in force and effect."

It will be noted readily that the title designates the Act as regulatory and places its enforcement under the jurisdiction of the State Food and Drug Commission. The question as to whether the Act is a regulatory or a revenue measure, for the purpose of applying the constitutional provision as to which house of the Legislature should originate the Act, is a matter to be determined from the Act itself and the facts as they then existed and were known to the Legislature. In the very nature of this constitutional provision it cannot be determined on facts existing seventeen years later. Clearly Section 83 was a regulatory measure when enacted. Conceding this point it must be said that subsequent events cannot change its character and convert it into a revenue measure in violation of Section 17, Article 4, of the State Constitution.

The appellant contends that the Act violates Section 19, Article 4, of the State Constitution in that it em-

braces more than one subject. A reading of the ██ title is quite convincing that it embraces but one subject—the regulation and control of petroleum and the products thereof, prescribing the manner, fixing the duties of the commission in charge, and providing for penalties, all of which relate to the one subject-matter. Authorities are numerous upon the general subject, covering a wide variety of subjects, and hold that if there is any reasonable basis for grouping together in one act various matters of the same nature, and the public cannot be deceived reasonably thereby, the act is valid. *Bright* v. *McCullough, Treas.* (1866), 27 Ind. 223; *Maule Coal Co.* v. *Partenheimer, Admr.* (1900), 155 Ind. 100, 55 N. E. 751; *Baldwin* v. *State* (1924), 194 Ind. 303, 141 N. E. 343; *State ex rel.* v. *Steinwedel* (1932), 203 Ind. 457, 180 N. E. 865.

The contention that the statute requires an inspector to label the container and to do nothing more cannot be supported. Evidently the appellant overlooks the provision that the enforcement of the Act is placed under the control of the State Food and Drug Commission with the power and authority to promulgate necessary and reasonable rules and regulations, which power and authority this court has upheld on numerous occasions. *Blue* v. *Beach* (1900), 155 Ind. 121, 133, 56 N. E. 89; *Standard Oil Co.* v. *Henry* (1922), 192 Ind. 171, 186, 133 N. E. 742. In this connection it may be noted that the salaries of the clerks employed by the commission are paid from the general funds of the state by specific appropriations and not from the oil inspection fund. Also, the appellant fails to take into account the expense of housing and equipping the offices of the commission and those employed. This is an item of expense not considered in the appellant's complaint.

The appellant complains of the fact that a different method is provided for the inspection of kerosene; and

that gasoline is kept in containers which make it difficult, if not impossible, to inspect. The Legislature classified petroleum products and provided one method for the inspection of kerosene and another for the inspection of gasoline, the latter to be inspected pursuant to rules and regulations adopted by the State Food and Drug Commission for the guidance of oil inspectors in the discharge of their duties under the Act, "not inconsistent with the provisions of this act." The term "inspect" when considered in connection with branding the article inspected is broad enough to indicate the scope of the inspection which may be embraced properly in the rules and regulations adopted by the commission. The absence of a formula in the statute does not relieve the article from inspection. *Standard Oil Co.* v. *Henry, supra.* Classification for purely regulatory purposes is permissible unless arbitrarily made. Such classification does not offend the Fourteenth Amendment to the Federal Constitution or Section 23, Article 1, of the State Constitution by denial of due process or equal protection of the law. *W. W. Cargill Co.* v. *Minnesota* (1901), 180 U. S. 452, 469, 21 S. Ct. R. 423.

It should be sufficient to say that the fact that the appellant and other dealers in gasoline may place the same in containers, which make it difficult for inspection, affords no reason to condemn the law.

This court is of the opinion that Chapter 83 of the Acts of the General Assembly of 1919 is not in conflict with the sections of the Constitution as contended by appellant, and no error was committed by the trial court in sustaining the demurrer to the complaint.

Judgment is affirmed.