**INVESTMENT COMPANY INSTITUTE, Appellant,**

v.

**Michael HATCH in his capacity as Commissioner of Commerce, et al., Respondents.**

No. C4–91–904.

Court of Appeals of Minnesota.

Nov. 26, 1991.

John D. French, Elizabeth L. Taylor, Faegre & Benson, Minneapolis, Harvey L. Pitt, James H. Schropp, John F. Coverdale, Fried, Frank, Harris, Shriver & Jacobson, Washington, D.C., (Matthew P. Fink, Lawrence A. Rogers, Patricia Louie, Investment Co. Institute, Washington, D.C., of counsel), for appellant.

Hubert H. Humphrey, III, Atty. Gen., Deborah J. Kohler, Spec. Asst. Atty. Gen., St. Paul, for Respondents.

Considered and decided by KLAPHAKE, P.J., and CRIPPEN, and LOMMEN,* JJ.

## OPINION

CRIPPEN, Judge.

Appellant contends that the statutory registration fee scheme embodied in Minn. Stat. § 80A.28, subd. 1(b) (1990) violates both the due process and the equal protection clauses of the United States Constitution. We affirm the trial court's summary judgment that the statutory language and legislative history sufficiently support the use of Minn.Stat. § 80A.28, subd. 1(b) to raise revenues.

## FACTS

Subdivision 1(b) of section 80A.28 provides for the collection of fees from the registration of redeemable securities.[1] The statute provides for a fee calculated as a percentage of the total offering and adds that there "shall be no maximum fee for securities registered pursuant to this clause." Minn.Stat. § 80A.28, subd. 1(b).

---

* Retired judge of the district court, acting as judge of the Court of Appeals by appointment pursuant to Minn.Const. art. VI, § 2.

1. The statute refers to redeemable securities issued by an open end management company or unit investment trust, as defined in the Investment Company Act of 1940. Mutual funds constitute a large portion of such redeemable securities.

In contrast, the fees collected for all other types of securities are subject to a maximum combined fee of $300. Minn.Stat. § 80A.28, subd. 1(a) (1990).

When these provisions were enacted in 1973, the licensing fees collected by the state from mutual funds appeared to match the cost of regulation. Since 1973 there has been a major growth in the number of mutual fund investors in Minnesota. As a result of this increased use of mutual funds, and because there is no maximum fee limit, the fees collected under subdivision 1(b) substantially exceed the costs of regulation.

## ISSUE

Did appellant demonstrate beyond a reasonable doubt that the collection of revenues under Minn.Stat. § 80A.28, subd. 1(b) violates the due process or equal protection clauses of the United States Constitution?

## ANALYSIS

### A. Due Process

■ Where an economic regulation is involved due process demands only that: (1) the act serve to promote a public purpose, (2) it is not an unreasonable, arbitrary or capricious interference, and (3) the means chosen bear a rational relation to the public purpose sought to be served. *Sisson v. Triplett*, 428 N.W.2d 565, 571 (Minn.1988) (quoting *Contos v. Herbst*, 278 N.W.2d 732, 741 (Minn.), *appeal dismissed sub nom, Prest v. Herbst*, 444 U.S. 804, 100 S.Ct. 24, 62 L.Ed.2d 17 (1979)). However, fees which are grossly disproportionate to the administrative costs at the time of adoption may constitute a "tax in disguise," an invalid exercise of state police powers. *Ramaley v. City of St. Paul*, 226 Minn. 406, 410, 33 N.W.2d 19, 21–22 (1948); *see Minneapolis St. Ry. v. City of Minneapolis*, 236 Minn. 109, 120, 52 N.W.2d 120, 126 (1952) ("license fee under the police

power may not be imposed for revenue purposes").[2] On the other hand, statutes can combine regulatory and revenue generating purposes. *See Texas Co. v. Brown*, 258 U.S. 466, 479, 42 S.Ct. 375, 378, 66 L.Ed. 721 (1922) (statute's combination of regulation with revenue raising is not a valid objection under the fourteenth amendment); *see also In re S.R.A., Inc.*, 213 Minn. 487, 493, 7 N.W.2d 484, 487 (1942) ("it is for the legislature to devise the mode, form, and extent of taxation to be imposed").

Our conclusions in this case are shaped largely by the standard we must follow in making decisions concerning the constitutionality of a statute. Because there is no question of fact in this case, and the only questions are of law, our review is de novo. *Karst v. F.C. Hayer Co.*, 447 N.W.2d 180, 181 (Minn.1989). However, we will declare state statutes unconstitutional "only when absolutely necessary and then only with great caution." *Snyder v. City of Minneapolis*, 441 N.W.2d 781, 788 (Minn.1989); *see St. Paul Cos. v. Hatch*, 449 N.W.2d 130, 137 (Minn.1989) (court must "interpret a statute, if possible, in such a way as to uphold its constitutionality"); Minn.Stat. § 645.17(3) (1990) (legislature does not intend to violate constitution). Moreover, the party challenging the statute's constitutionality must demonstrate the statute's infirmity beyond a reasonable doubt. *Snyder*, 441 N.W.2d at 788, *see also Anderson v. City of St. Paul*, 226 Minn. 186, 194, 32 N.W.2d 538, 543 (1948) (persons challenging classification bear burden of showing that classification is essentially arbitrary).

■ Appellant contends that because the entire statute embodies a regulatory scheme, subdivision 1(b) must be a pure licensing fee, enacted pursuant to the state's police powers, which cannot be used to collect extra revenues for the state treasury. Because a regulatory provision can also be revenue raising legislation, and because language in this statute can reasonably be interpreted as having a revenue

---

**2.** It is undisputed here that large excess revenues were not anticipated when the 1973 act was enacted and were not experienced immediately thereafter. Arguably, later excess revenues are not relevant to a determination of disproportionate fee revenue for due process purposes. Having found no authority for this argument, we decide the case on other bases.

raising purpose, we conclude that appellant's proposition is unconvincing.

1. The absence of a fee limitation on subdivision 1(b) securities can reasonably be interpreted as a revenue raising provision.

It is conceivable that the legislature in 1973 did not, as a matter of fact, anticipate revenue beyond the cost of regulation. It is evident fees imposed were not disproportionate to regulatory costs at the time this securities law was enacted. However, our task is not to determine whether the language could be interpreted in a better way. We seek to ascertain the feasibility of the interpretation which supports the constitutionality of the statute.

The prominent declaration against any maximum fee on unregistered securities can be interpreted as a revenue raising provision. While the statute does not expressly provide for the generation of excess revenues through the imposition of licensing fees, it clearly permits that possible result. In conspicuous contrast, the same section clearly states a fixed maximum limit for all other types of securities. *Compare* Minn.Stat. § 80A.28, subd. 1(a) *with* Minn.Stat. § 80A.28, subd. 1(b). Appellant has not asserted that the absence of a fee cap in subdivision 1(b) was inadvertent.

We cannot ignore the different language employed in the separate subdivisions and fail to give effect to the intended provisions of the law. *Laue v. Production Credit Ass'n*, 390 N.W.2d 823, 826–27 (Minn.App. 1986). A reasonable conclusion is that the legislature purposefully did not include a cap on the licensing fees on mutual funds, indicating that subdivision 1(b) was intended to do more than just recover the costs of regulation. Appellant has failed to demonstrate that this interpretation is unreasonable.

2. The legislature's failure to mention a revenue raising aspect in the title of the bill

does not preclude the existence of a revenue raising provision.

Appellant argues that because Article IV, section 17 of the Minnesota Constitution demands that the title of legislation reflect its purpose, and since the 1973 Act does not mention taxation, the legislature could not have intended that subdivision 1(b) generate revenues.

The title of the law governs the enactment, not the interpretation of the statute. Moreover, the single subject provision was not intended to prevent comprehensive legislation and should be given a liberal interpretation. *Johnson v. Harrison*, 47 Minn. 575, 577, 50 N.W. 923, 924 (1891) (single subject provision designed to prevent "logrolling legislation" where different and disconnected subjects are united in one bill and passed by coalitions); *see also Wass v. Anderson*, 312 Minn. 394, 399–403, 252 N.W.2d 131, 134–37 (1977) ("an act relating to transportation" specific enough to encompass a comprehensive bill with various provisions, including taxation provisions); *Lifteau v. Metropolitan Sports Facilities Comm'n*, 270 N.W.2d 749, 753 (Minn.1978) (single subject provision does not require title of a bill to be a complete index of its provisions). The title of a bill often fails to reflect every part of the bill.

All provisions of the 1973 Act, including the fee provision in question, relate to securities. The Securities Act title provides sufficient notice of the general subject and the interests affected. The omission of "taxation" from the title of the Securities Act does not adequately support the conclusion that subdivision 1(b) cannot be used to collect revenues beyond regulatory cost.

3. The origination of the Securities Act in the senate does not preclude the operation of subdivision 1(b) as a revenue raising mechanism.

Appellant also contends that the 1973 Act's origination in the senate evidences a legislative intent to impose only a regulatory fee in subdivision 1(b).[3]

---

**3.** More particularly, appellant's argument is: (1) tax measures must originate in the House of Representatives, Minn.Const. art. IV, section 18; (2) courts should assume that legislatures intend

constitutional acts; (3) the 1973 Act did not originate in the house; therefore (4) the legislature could not have intended that subdivision

Regulatory acts which produce excess revenues are not revenue measures subject to the origination clause where the primary purpose of the bill is to regulate an industry. *See United States v. Munoz–Flores,* 495 U.S. 385, ——, 110 S.Ct. 1964, 1972–74, 109 L.Ed.2d 384 (1990) (act that does not purport to raise revenue generally is not within the scope of the origination clause); Annotation, *Application of Constitutional Requirement That Bills for Raising Revenue Originate in Lower House,* 4 A.L.R.2d 973, 981–84 (1949); *see also Stith Petroleum Co. v. Department of Audit & Control,* 211 Ind. 400, 5 N.E.2d 517 (1937) (court rejected claim that inspection fees relating to petroleum products had become so excessive over seventeen years so as to constitute a tax which was invalid because the act originated in the senate). Revenue measures in bills enacted for other primary purposes are valid if the revenue provision is incidental. *See Munoz–Flores,* 495 U.S. at ——, 110 S.Ct at 1972–74. Finally, we must view an origination clause argument at the time of passage, examining the facts as they existed and were known to the legislature. *See Stith Petroleum,* 211 Ind. at 408, 5 N.E.2d at 521. It is evident here that the 1973 enactment became something different in later years, but that development does not govern an analysis of the proper origination of the law.

The *Munoz–Flores* court indicated that whether a revenue provision is incidental is determined by both the amount collected and the bill's primary purpose. *Munoz–Flores,* 495 U.S. at ——, 110 S.Ct. at 1972–74. In this case, just as appellant contends, the primary purpose of the 1973 Act was regulation.

Equally clear, at the time the 1973 Act was passed any excess revenues collected by this provision were incidental. Although we have found it plausible to believe excess revenues were anticipated, it is not evident anyone expected the generation of large revenues for the state treasury.

Because the Act was not primarily a revenue raising measure when passed in 1973, either in substance or form, the fail-

ure to originate in the senate does not evidence a legislative intent to preclude the collection of excess revenues from subdivision 1(b).

4. The legislature's subsequent actions do not assist us in determining the validity of the collection of excess fees.

Appellant claims that legislative efforts in 1985 to restrict the fees imposed on the registration of redeemable securities shows support for the interpretation of subdivision 1(b) as only a police power license fee. However, the attempt to place a cap on fees merely reflects some legislative support for limiting the fees generated. Moreover, the amendment attempt failed. The proposed measures never made it to the level of full legislative consideration.

Similarly, the state cannot claim that the failure of this effort demonstrates support for their proposition that subdivision 1(b) is a revenue measure. The legislative history of the 1985 measure is inconclusive. There is no record detailing why the measure never received full consideration. More importantly, there is no connection between the 1985 legislature's actions and the intent of the 1973 legislature.

We also reject the state's contention that 1981 legislative activity transformed the 1973 Act into a revenue raising measure if it was not one already. The legislative history indicates, and both parties agree, that the 1981 changes were minor alterations, and that no substantial changes were intended. There was no debate in either house and the bill passed unanimously in both houses. We conclude these actions do not reveal the intent of the 1973 legislature.

5. The 1990 affidavit of Edward Driscoll does not provide convincing evidence of legislative intent.

Appellant cannot cite any legislative history indicating that the 1973 legislature enacted subdivision 1(b) solely as a licensing fee. The only support for the appellant's position comes from the affidavit of Edward Driscoll, who was Commissioner of Commerce in 1973.

---

1(b) raise revenues beyond the costs of regula- tion.

Mr. Driscoll's two page affidavit was drafted in 1990, seventeen years after the Act's passage. It was prepared in anticipation of litigation. The affidavit reflects the views of an administrator, and does not purport to reflect the legislative debate. In other words, the affidavit purports to disclose the intent only of Mr. Driscoll. It does not provide a basis for inferring the intent of the 1973 legislature. *See Laue,* 390 N.W.2d at 828 (court "cannot extend deference to subsequent statements of intent," even when declarant was legislator when bill was considered).

6. The Commerce Department's annual report is insufficient to glean legislative intent.

Appellant further contends that the Commerce Department's interpretation of the Act as imposing only fees is entitled to deference. Appellant cites the Finance Department's Annual Fee Report for support.

While administrative agency interpretations may be helpful in ascertaining legislative intent in certain cases, *see In re Answer of Minnesota Power & Light Co.,* 289 Minn. 64, 70, 182 N.W.2d 685, 689 (1970) (weight accorded agency interpretations where agency is charged with administering statute, especially if interpretation is longstanding), such a conclusion is not warranted by the record in this case. The language appellant cites is in the introduction to the report prepared by the Finance Department. There is nothing in the record indicating that the Commerce Department employs the identical definition in identifying fees for the report. There is also nothing indicating that the legislature employed a similar definition at any time. The listing of subdivision 1(b) fees in the Finance Department's Annual Fee Report is not sufficient evidence to conclude that the legislature intended that subdivision 1(b) was not designed to produce potentially excess revenues.

7. The letters from department Commissioners Donhowe and Hatch do not support the conclusion that subdivision 1(b) was never intended to produce excess revenues.

Appellant also argues that letters from the Commissioner of Finance, Gordon Donhowe, and the Commissioner of Commerce, Michael Hatch, favoring proposed limitations on subdivision 1(b) fees support its position that subdivision 1(b) only imposes regulatory fees.

The Donhowe letter merely states that fees were disproportionate to costs and that fees generally should not exceed costs. The letter was in support of a 1985 effort to place a cap on subdivision 1(b) fees. The Hatch letter merely indicates that rates charged are disproportionately high and that the Commissioner supported legislative action to place a cap on the fees charged.

These letters do not demonstrate that subdivision 1(b) was simply a license fee provision, rather they only identify an inequity. Moreover, the Commissioners' belief that the legislature needed to cap the fee provision does not indicate, as appellant claims, that the Commissioners believed that excess revenues could not be collected under the present law. Rather, it appears that both letters supported a change in the existing law. The two agencies headed by these individuals routinely charged and collected fees as provided in subdivision 1(b).

Although the fees imposed are admittedly disproportionate to regulatory costs, we conclude the Act was passed for both regulatory and revenue purposes, and subdivision 1(b), as enacted, does not violate due process.

**B. Equal Protection**

The legislature has broad discretion in making a classification and "if any reasonable ground for making a distinction can be found, a court should sustain the classification." *Erie Mining Co. v. Commissioner of Revenue,* 343 N.W.2d 261, 267 (Minn.1984); *see Rio Vista Non–Profit Hous. Corp. v. Ramsey County,* 335 N.W.2d 242, 246 (Minn.1983) (legislation sustained as having a rational basis if any conceivable state of facts support it), *appeal dismissed,* 464 U.S. 1033, 104 S.Ct. 690, 79 L.Ed.2d 158 (1984); *In re McCannel,* 301 N.W.2d 910, 917–18 (Minn.1980)

(any legitimate purpose can support tax). The equal protection clause recognizes a wide scope of discretion and avoids what is done "only when it is without any reasonable basis and therefore is purely arbitrary." *Anderson,* 226 Minn. at 194, 32 N.W.2d at 543 (1948) (quoting *Whitney v. California,* 274 U.S. 357, 369, 47 S.Ct. 641, 646 (1927)).

The revenue raising purpose of subdivision 1(b) is enough to distinguish it from enactment of subdivision 1(a). *See In re Taxes on Property of Cold Spring Granite Co.,* 271 Minn. 460, 466, 136 N.W.2d 782, 787 (1965) (court will not disturb legislative determination "unless the classification is clearly arbitrary and has no reasonable basis"). We also agree with the district court's finding that the general nature of subdivision 1(a) securities and subdivision 1(b) securities is different in terms which are not arbitrary or unreasonable. Appellant has not demonstrated that this basis for different treatment is unreasonable. We conclude, therefore, that subdivision 1(b), as enacted, does not violate equal protection.

## DECISION

We affirm the district court's summary judgment that fee revenues are lawfully recovered by the state under Minn.Stat. § 80A.28, subd. 1(b).

Affirmed.